ACCEPTED
04-15-00005-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/23/2015 4:16:16 PM
KEITH HOTTLE
CLERK

NO. 04-15-00005-CV

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/23/2015 4:16:16 PM
KEITH E. HOTTLE
Clerk

IN RE ESTATE OF JACK HIROMI IKENAGA, SR., DECEASED

ON APPEAL FROM THE PROBATE COURT NO. 1, BEXAR COUNTY, TEXAS
HONORABLE POLLY JACKSON SPENCER PRESIDING
CAUSE NO. 2011-PC-4330

## BRIEF OF APPELLEES JACK H. IKENAGA, JR., NANCY SUMNERS, CHRISTINE IKENAGA, PATRICK GASIOROWSKI, AND ERIC J. GOODMAN

FORD MURRAY, PLLC
William H. Ford
State Bar No. 07246700
Veronica S. Wolfe
State Bar No. 24066095
10001 Reunion Place, Suite 640
San Antonio, Texas 78216
(210) 731-6400 – Telephone
(210) 731-6401 – Fax
bill.ford@fordmurray.com
veronica.wolfe@fordmurray.com

HOUSTON DUNN, PLLC
Samuel V. Houston, III
State Bar No. 24041135
4040 Broadway, Suite 440
San Antonio, Texas 78209
(210) 775-0882 – Telephone
(210) 826-0075 – Fax
sam@hdappeals.com

PRICHARD HAWKINS YOUNG, LLP
Shelayne Clemmer
State Bar No. 24044733
Kevin M. Young
State Bar No. 22199700
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Fax
sclemmer@phy-law.com
kyoung@phy-law.com

## ATTORNEYS FOR APPELLEES
## ORAL ARGUMENT CONDITIONALLY REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to this appeal and the names and addresses of those parties' counsel:

| | |
|---|---|
| **APPELLANT/PLAINTIFF**<br>Sandra Ikenaga | **APPELLATE/TRIAL COUNSEL**<br>David L. McLane<br>ATTORNEY AT LAW<br>9901 IH-10 West, Suite 695<br>San Antonio, Texas 78230<br><br>**TRIAL COUNSEL**<br>Jason B. Ostrom<br>Nicole K. Sain<br>OSTROM MORRIS, PLLC<br>6363 Woodway, Suite 300<br>Houston, Texas 77006<br><br>Roland C. Colton<br>COLTON LAW GROUP<br>28202 Cabot Road, 3rd Floor<br>Laguna Niguel, California 92677<br><br>Philip M. Ross<br>ATTORNEY AT LAW<br>1006 Holbrook Road<br>San Antonio, Texas 78218 |
| **APPELLEE/DEFENDANT**<br>Jack H. Ikenaga, Jr., | **APPELLATE COUNSEL**<br>Samuel V. Houston, III<br>HOUSTON DUNN, PLLC<br>4040 Broadway, Suite 440<br>San Antonio, Texas 72809<br><br>**TRIAL/APPELLATE COUNSEL**<br>William H. Ford<br>Veronica S. Wolfe<br>FORD MURRAY, PLLC<br>10001 Reunion Place, Suite 640<br>San Antonio, Texas 78216 |

J. Ken Nunley
THE NUNLEY FIRM
1580 South Main, Suite 200
Boerne, Texas 78006

Michael J. Cenatiempo
CENATIEMPO & DITTA, L.L.P.
770 South Post Oak Lane, Suite 500
Houston, Texas 77056

| | |
|---|---|
| **APPELLEES/DEFENDANTS**<br>Nancy Sumners, Christine Ikenaga, Patrick Gasiorowski, and Eric J. Goodman | **TRIAL/APPELLATE COUNSEL**<br>Shelayne Clemmer<br>Kevin M. Young<br>PRICHARD HAWKINS YOUNG, LLP<br>10101 Reunion Place, Suite 600<br>San Antonio, Texas 78216 |

**APPELLEE/DEFENDANT**
ACCC Holding Corporation

**APPELLATE COUNSEL**
Roger L. McCleary
Nicholas Stepp
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Boulevard
Suite 2500
Houston, Texas 77056

**TRIAL/APPELLATE COUNSEL**
Joseph S. Cohen
Roger L. McCleary
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Boulevard
Suite 2500
Houston, Texas 77056

**APPELLEE/DEFENDANT**
William D. Bailey

**TRIAL/APPELLATE COUNSEL**
Mark Stanton Smith
HEARD & SMITH, L.L.P.
3737 Broadway, Suite 310
San Antonio, Texas 78209

ii

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ......................................................i

TABLE OF CONTENTS.........................................................................iii

TABLE OF AUTHORITIES .................................................................... v

STATEMENT OF THE CASE ............................................................... vii

STATEMENT REGARDING ORAL ARGUMENT...................................viii

ISSUES PRESENTED ......................................................................viii

STATEMENT REGARDING THE CLERK'S RECORD ...........................viii

STATEMENT OF FACTS.................................................................... 1

    I.     Jack Ikenaga, Sr.'s Death Results in Litigation Between His Widow and Members of the Ikenaga Family............................ 1

          A.    Sandra Initiates a Probate Proceeding and Seeks to Be Named as the Estate's Administrator. ............................ 1

          B.    Sandra Files Suit Against the Appellees and Others and Alleges Numerous Claims. .................................2

          C.    Appellees Respond with Counterclaims and Motions for Summary Judgment and Other Related Motions. ............5

          D.    The Trial Court Grants Objections to Some of Sandra's Summary Judgment Evidence, Grants the Motions for Summary Judgment, and Severs Sandra's Claims Against AHC.........................................................8

    II.    The Parties Reach a Settlement, and the Trial Court Enters a Final Judgment............................................................ 10

    III.    Sandra Willingly Accepts the Benefits Conferred to Her Under the Final Judgment................................................................ 12

SUMMARY OF THE ARGUMENT............................................... 14

ARGUMENT........................................................................15

    I.    The Final Judgment Must Be Affirmed. ...................................15

          A.    Sandra Has Waived the Ability to Challenge the Final

Judgment By Accepting the Benefits of That Judgment..15

B.    Sandra Did Not Preserve Her Complaint That the Final Judgment Does Not Comply With the Settlement Agreement. ........................................................... 16

C.    There Is Strict Compliance Between the Final Judgment and the Settlement Agreement ........................................ 18

    1.    The settlement agreement specifically referenced Jack Sr.'s will and Christine's claim against the estate. .................................................................... 18

    2.    Sandra was not entitled to any indemnification by virtue of the settlement. ................................... 20

    3.    Sandra was not entitled to any Lexus by virtue of the settlement. ................................................. 22

II.    The Court Does Not Review the Trial Court's Summary Judgment Orders in Determining Whether the Final Judgment Should Be Reversed. ................................................ 25

A.    Sandra Misreads the Trial Court's Order; It Did Consider Much of Sandra's Summary Judgment Evidence When It Ruled on Appellees' No-Evidence Motions for Summary Judgment. .................................. 25

B.    Even If the Court Was Required to Review the Merits of the Summary Judgment Orders, Sandra Has Waived Any Issue Regarding the Summary Judgments. 26

III.    Conclusion and Prayer .............................................................. 28

CERTIFICATE OF COMPLIANCE ............................................................. 31

CERTIFICATE OF SERVICE ...................................................................... 31

APPENDIX ........................................................................................... A

iv

# TABLE OF AUTHORITIES

**Page**

## CASES

*Birmingham-Queen v. Whitmire,*
No. 04-05-00646-CV, 2006 WL 1539587
(Tex. App.—San Antonio June 7, 2006, no pet.) (mem. op.)...................26

*Chandler v. CSC Applied Techs., LLC,*
376 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).......27

*City of Brownsville v. Alvarado,* 897 S.W.2d 750 (Tex. 1995) ...................27

*Clanin v. Clanin,*
918 S.W.2d 673 (Tex. App.—Fort Worth 1996, no writ) ..........................24

*Doncaster v. Hernaiz,*
161 S.W.3d 594 (Tex. App.—San Antonio 2005, no pet.) ........................26

*General Motors Corp. v. Gayle,*
951 S.W.2d 469 (Tex. 1997) (orig. proceeding).......................................26

*Leedy v. Leedy,*
399 S.W.3d 335 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ......15, 16

*McLendon v. McLendon,*
847 S.W.2d 601 (Tex. App.—Dallas 1992, writ denied) .................... 18, 24

*PGP Gas Prods., Inc. v. Fariss,* 620 S.W.2d 559 (Tex. 1981)................. 16, 17

*R.H. v. Smith,* 339 S.W.3d 756 (Tex. App.—Dallas 2011, no pet.) ..............24

*Rosales v. Rosales,*
No. 04-05-00906-CV, 2006 WL 2955602
(Tex. App.—San Antonio Oct. 18, 2006, pet. denied)
(mem. op. on reh'g).................................................................18, 19, 24

*Salmon v. Salmon,* 395 S.W.2d 29 (Tex. 1965)......................................... 19

*Stephens v. Dolcefino,*
126 S.W.3d 120 (Tex. App.—Houston [1st Dist.] 2003),
*pet. denied,* 181 S.W.3d 741 (Tex. 2005)................................................28

*Tex. State Bank v. Amaro,* 87 S.W.3d 538 (Tex. 2002)..............................15

*Tri-Steel Structures, Inc. v. Baptist Found. of Tex.*,
  166 S.W.3d 443 (Tex. App.—Fort Worth 2005, pet. denied)...................26

*Vickrey v. Am. Youth Camps, Inc.*,
  532 S.W.2d 292 (Tex. 1976) (per curiam)................................................ 18

**RULES**

TEX. R. APP. P. 33.1(a).......................................................................... 16, 28

TEX. R. APP. P. 38.1(h) .............................................................................28

TEX. R. APP. P. 44.1 ................................................................................ 27

## STATEMENT OF THE CASE

**Nature of the Case:**

Following the death of her husband, Jack H. Ikenaga Sr., Sandra Ikenaga initiated probate proceedings and eventually sued her step-children, her son, the estate's temporary administrator, and ACCC Holding Corporation. 1 CR 32, 277, 329. Appellees[1] responded with counterclaims. 2 CR 1055, 1064. The parties were eventually able to settle their competing claims. The terms of the settlement agreement were dictated into the record, and all parties approved of those terms. 15 RR 3, 22-25. The settlement required appellees to prepare a final written agreement that would be signed by all parties. 15 RR 5. When Sandra refused to sign, appellees moved for entry of a final judgment based upon the settlement agreement. 17 RR 1.

**Trial Court:**

The Honorable Polly Jackson Spencer, Judge of the Probate Court No. 1, Bexar County, Texas.[2]

**Trial Court Disposition:**

The trial court rendered a final judgment based upon the parties' settlement agreement. 7 CR 4672.

---

[1] The term "appellees" refers to Jack H. Ikenaga, Jr., Nancy Sumners, Christine Ikenaga, Patrick Gasiorowski, and Eric J. Goodman.

[2] The proceedings were initially docketed in Probate Court No. 2 before Judge Rickhoff. He later recused himself. 7 CR 4526.

## STATEMENT REGARDING ORAL ARGUMENT

The record plainly demonstrates that the judgment should be affirmed in all respects. As a result, oral argument is not necessary. Nonetheless, should the Court grant appellant's request for oral argument, appellees reserve the right to participate in the oral argument.

## ISSUES PRESENTED

Appellees disagree with appellant's statement of the issues presented. Instead, appellees believe this case presents the following issues:

1. Sandra Ikenaga has waived any challenge to the final judgment because she has accepted the benefits of the judgment she now seeks to have set aside.

2. Sandra Ikenaga is barred from challenging the final judgment because she did not preserve her complaint that the final judgment does not comply with the settlement agreement.

3. The final judgment must be affirmed because the final judgment strictly complies with the settlement agreement.

## STATEMENT REGARDING THE CLERK'S RECORD

The clerk's record does not include complete copies of all items described in the index. Appellees have requested the clerk to prepare a supplemental/corrected clerk's record. For the Court's convenience, omitted documents are included in the appendix to this brief.

TO THE HONORABLE FOURTH COURT OF APPEALS:

Appellees Jack H. Ikenaga, Jr., Nancy Sumners, Christine Ikenaga, Patrick Gasiorowski, and Eric J. Goodman file this brief asking the Court to affirm the final judgment.

## STATEMENT OF FACTS

### I.  Jack Ikenaga, Sr.'s Death Results in Litigation Between His Widow and Members of the Ikenaga Family.

Jack Ikenaga, Sr. married Sandra Ikenaga in 1988. 3 CR 2099. Both had been married before and had children from those marriages. 17 RR 16-20. Jack Sr. had 4 children, Jack Ikenaga, Jr., Nancy Ikenaga Sumner, Linda Ikenaga Gasiorowski, and Christine Ikenaga. 6 CR 4230-31. Linda Ikenaga Gasiorowski predeceased Jack Sr., and she is survived by her son, Patrick Gasiorowski. 17 RR 23-24.[3] Sandra had one child from her prior marriage, Eric J. Goodman. *See* 6 CR 4231; 17 RR 19, 24.

### A.  Sandra Initiates a Probate Proceeding and Seeks to Be Named as the Estate's Administrator.

Jack Sr. died on September 30, 2011. 1 CR 31. A month or so later, Sandra initiated a probate proceeding in Bexar County, which was docketed in Probate Court No. 2. 1 CR 32. At that time, Sandra sought to be named temporary administrator over Jack Sr.'s estate. 1 CR 32. Sandra's application

---

[3] Jack Sr. had another child during his first marriage, Bonnie Jean Ikenaga. 17 RR 18. She, however, passed away while an infant. 17 RR 18.

was granted, and she was named temporary administrator by court order on November 9, 2011. 7 CR 4434.

On the same day, Jack filed an application to probate Jack Sr.'s will, which named Jack Jr. as executor. 1 CR 42, 48. The application was docketed in Probate Court No. 1 in a separate cause number. 1 CR 48. Jack's application was later consolidated into the proceeding initiated by Sandra. 7 CR 4438.[4]

Jack Jr. contested Sandra's appointment, and he sought the appointment of a new administrator. 1 CR 41. Consistent with Jack Jr.'s objection, the trial court removed Sandra as temporary administrator. 7 CR 4439. In her place, the trial court named William Bailey, a San Antonio attorney, as the estate's temporary administrator. 7 CR 4441. All parties agreed to Mr. Bailey's appointment as a "neutral" administrator. 7 CR 4441.

### B. Sandra Files Suit Against the Appellees and Others and Alleges Numerous Claims.

Sandra filed suit against her step-children, step-grandchild, her son, and Bailey. 1 CR 277-78. Sandra's primary complaint was that Jack Sr. had given away stock and other interests in companies that he acquired while the two were married. 1 CR 279. In her pleadings, Sandra was most concerned with Jack Sr.'s conveyances of his stock in ACCC Holding Corporation (AHC).[5] 1 CR 280.

---

[4] Sandra initially opposed Jack Jr.'s application to probate Jack Sr.'s will. *See* 1 CR 89. After she filed her claims against appellees, she formally sought to join in the pending probate of Jack Sr.'s will. 1 CR 91

[5] AHC is a holding company for several insurance-related businesses. The particulars of its

Jack Sr. initially received 265.7 AHC shares in May of 1997 while in Georgia. 1 CR 281; 3 CR 1874, 1878, 1887, 2099. Jack acquired more AHC shares over time pursuant to his employment agreement with the company. 1 CR 281; 3 CR 1958-59. In January 2000 and September 2001, Jack Sr. conveyed AHC shares to his children and Sandra's son. 1 CR 281-82; Appx. B (Jack Jr. affidavit). Several years later, Jack Sr. and Jack Jr. entered into a stock purchase agreement wherein Jack Jr. agreed to purchase some of Jack Sr.'s shares. 1 CR 282.[6] Sandra alleged that the transfers and the stock purchase agreement were wrongful. 1 CR 280-85.

Sandra also complained about actions taken with respect to other businesses formed by Jack Sr., asserting that Jack Sr. wrongfully transferred his interests in Isthmus, Inc. to his children. 1 CR 287. Sandra also made various complaints as to the manner in which profits were distributed from Isthmus, Inc. and another business, IBI Group Holdings, LLC, and generally alleged that there had been wrongful transfers of money and property. 1 CR 285-88.

Based upon the foregoing allegations, Sandra alleged a number of claims against appellees. As the administrator of the estate, Bailey stood in the shoes of the decedent. As such, Bailey was sued in his capacity as temporary

---

operation and the circumstances surrounding its formation are not relevant to the issues presented in this appeal. Nonetheless, a history is set out in AHC's motion for summary judgment. *See* 3 CR 1990-92; *see also* 3 CR 1898.

[6] Under that agreement, Jack Jr. agreed to purchase 102.46 shares in AHC for $9,083,961.18 in December 2008. *See* Appx. B (Exhibit 6 to Jack Jr.'s affidavit).

administrator by Sandra for the claims she had against Jack Sr. for the various stock transfers, because Sandra alleged that Jack Sr., her husband, had breached fiduciary duties owed to her and committed constructive fraud. 1 CR 291-92, 299. Sandra alleged multiple fraud theories against all appellees, including fraud on the community, fraud by nondisclosure, and traditional fraud by misrepresentation. 1 CR 293-97. Sandra also alleged a conspiracy to defraud claim. 1 CR 297.

Complaining generally about various transfers of property, Sandra alleged claims for unjust enrichment, money had and received, and conversion. 1 CR 299-301. Sandra also included a claim under the Declaratory Judgments Act, asking that the transfers of AHC stock be set aside under the Texas Uniform Fraudulent Transfer Act and under the common law. 1 CR 301-03. The petition also included requests for a constructive trust and an accounting. 1 CR 303. The petition concluded with an identity theft claim. 1 CR 304.

In separate petitions, Sandra filed claims against Jack Jr., Amegy Bank, and Bailey. 1 CR 329. The first involved a loan agreement with Amegy Bank, and Sandra's request for a declaration that the loan is invalid. 1 CR 389-30. The other petition involved a declaratory judgment claim wherein Sandra sought a declaration that a survivorship provision in a joint bank account held by Jack Jr. and Jack Sr. is invalid. 1 CR 323-24. The petition also repeated many of the claims that were included in the earlier petition, such as breach of

fiduciary duty, conversion, money had and received, constructive fraud, unjust enrichment, and conspiracy. 1 CR 325-26. These claims were all focused upon the funds contained in the joint bank account. 1 CR 325-26.

## C. Appellees Respond with Counterclaims and Motions for Summary Judgment and Other Related Motions.

Nancy, Christine, Patrick, and Eric asserted counterclaims against Sandra. 2 CR 1055. The claims included unjust enrichment, violations of the Texas Theft Liability Act, fraud, conversion, breach of fiduciary duty, and waste relating to tax refund for the 2011 tax year. 2 CR 1055, 1057. Jack Jr. also filed similar tort claims, as well as a claim for intentional infliction of emotional distress, a request for a declaratory judgment regarding Sandra's obligation for community property debts, a reimbursement claim, and a request for an accounting. 2 CR 1068-71. They also sought declarations that Jack Sr.'s original 265.7 AHC shares and his interest in Auto Computer and Imaging, Inc. were his separate property. 2 CR 1073; 3 CR 1517, 1598.

Appellees also made claims against the estate.[7] Only two of those claims are relevant to this appeal. Christine made a claim against the estate for $200,000.00 arising out of a loan she made to her father for a business venture that never came to fruition. 6 CR 3989. AHC made a separate claim against the estate for roughly $489,000.00. 15 RR 14. This figure represented

---

[7] Nancy, Christine, Patrick, Eric, Jack Jr., and AHC filed cross claims against the estate regarding an indemnity provision in the stock purchase agreement between Jack Jr. and Jack Sr. 2 CR 1058-59, 1071-73. That provision is not at issue in this appeal.

tax liability associated with the liquidation of Jack Sr.'s deferred compensation plan at AHC. 15 RR 14.

AHC separately sought summary judgment with respect to all of Sandra's claims. 3 CR 1985. AHC also filed a motion to apply foreign law in resolving its defense to Sandra's claim under the Uniform Commercial Code. 3 CR 1826. As it relates to the 265.7 AHC shares and other property acquired by Jack Sr. while he was domiciled in Georgia, a common law property state, AHC asked the court to apply that state's law in determining whether the property was his separate property. 3 CR 1826. The other appellees joined in that motion. 3 CR 2048.

Similar to AHC, Jack Jr., Nancy, Christine, Patrick, and Eric sought a partial summary judgment seeking a declaration that Jack Sr.'s 265.7 AHC shares and his interest in Auto Computer & Imaging, Inc. were his separate property because they were acquired by him while he was domiciled in Georgia. 3 CR 2056-57. Because the AHC shares were Jack Sr.'s separate property, appellees asserted that any transfer of those shares could not be wrongful. 3 CR 2056-60. Appellees also moved for summary judgment on their statute of limitations affirmative defense, asserting that Sandra's claims arising out of any disposition of Jack Sr.'s interest in AHC, Isthmus, Inc., or IBI Group Holdings, LLC were time barred. 3 CR 2057.

Nancy, Christine, Patrick, and Eric also filed a no-evidence motion for summary judgment, arguing that there was no evidence to support one or

more of the elements of Sandra's claims for fraud, conspiracy, unjust enrichment, money had and received, the declaratory judgment claim to set aside stock transfers, and all claims asserted against Patrick. 3 CR 1840-50. Jack Jr. filed a similar no-evidence motion for summary judgment. 3 CR 1976.

Sandra responded to the appellees' motions, and a single hearing was held on September 17, 2014. The trial court first took up the appellees' objections to Sandra's summary judgment responses and evidence. 13 RR 3-10. Appellees objected to the timeliness of Sandra's responses. 13 RR 3-4. In response to the partial motion for summary judgment ground on limitations, appellees objected to Sandra's reliance upon the discovery rule because it had not been previously pleaded. 13 RR 3. Citing insufficient pleadings, appellees also objected to Sandra's reliance upon a new theory, namely that Jack Sr. had not complied with provisions in the AHC Shareholder Agreement that restrict the transfer of AHC stock. 13 RR 3. As for the no-evidence motions for summary judgment, there was an objection to Sandra's failure to authenticate discovery responses attached as summary judgment evidence. 13 RR 4. Finally, AHC made an objection as to all matters and evidence in Sandra's response to its motion for summary judgment that were not supported by her pleadings. 13 RR 3.

**D. The Trial Court Grants Objections to Some of Sandra's Summary Judgment Evidence, Grants the Motions for Summary Judgment, and Severs Sandra's Claims Against AHC.**

The trial court denied in part and sustained in part the appellees' objections to Sandra's summary judgment response and evidence. The trial court overruled the objections to the timeliness of Sandra's responses. 13 RR 9-10; 7 CR 4623. But the trial court sustained the objections based upon Sandra's failure to plead the discovery rule and the contractual provisions restricting transfers of AHC stock. 13 RR 10. The trial court also sustained the objections to unauthenticated discovery responses that were attached to Sandra's summary judgment response. 13 RR 91. Finally, the trial court sustained AHC's objections to matters and evidence that were not supported by Sandra's pleadings. 7 CR 4624.

The trial court granted all other relief requested by appellees. The resulting orders disposed of all of Sandra's claims against AHC and most of the claims asserted against the other appellees. With respect to the motions addressing Jack Sr.'s separate property interests in AHC stock and Auto Computer and Imaging, Inc., the trial court granted the motion to apply foreign law. 13 RR 27; 7 CR 4606.

The trial court also granted the appellee's partial motion for summary judgment. 7 CR 4617. Based upon the order, the trial court concluded that Jack Sr.'s 265.7 AHC shares as well as his interest in Auto Computer and

Imaging, Inc.[8] were his separate property. 7 CR 4617. Because the AHC shares were Jack Sr.'s separate property, any claim arising from Jack Sr.'s disposition of those shares failed as a matter of law. 3 CR 4617. Finally, the trial court ruled that limitations barred Sandra's claims for fraud on the community, actual fraud, fraud by nondisclosure, conspiracy to defraud, unjust enrichment, and money had and received. 7 CR 4617-18.

Appellees' no-evidence motions for summary judgment were granted in their entirety, disposing of Sandra's claims for fraud on the community, actual fraud, fraud by nondisclosure, conspiracy, unjust enrichment, and money had and received. 7 CR 4611-13. The order also disposed of Sandra's declaratory judgment claim to set aside the AHC stock transfers, both under the Texas Uniform Fraudulent Transfer Act and the common law. 7 CR 4613.

The resulting summary judgment order on appellees' no evidence motions for summary judgment incorporated the trial court's evidentiary rulings made during the hearing. Although the trial court had granted objections to Sandra's evidence supporting her response to the no-evidence motions for summary judgment, a disagreement arose over the breadth of the trial court's ruling and how it would be reflected in the order. 13 RR 91-92, 94-95.

---

[8] Appellees alleged that Auto Computer and Imaging, Inc.'s assets were used to capitalize Isthmus, Inc. when that corporation was formed. *See* 2 CR 1065, 1073.

The principle issue concerned Sandra's reliance upon evidence that appellees had attached to their partial motion for summary judgment. *See* 4 CR 2579; 13 RR 84, 97-98. Sandra had cited to appellees' evidence in opposing the no-evidence motions for summary judgment. 4 CR 2579. Sandra's counsel wanted it made clear that the trial court was considering the evidence referenced by Sandra in determining whether to grant summary judgment. 13 RR 97-99. Consistent with that request, the order recites that the trial court considered the motions for summary judgment, argument of counsel, "deposition evidence presented and attached to the response, as well as any exhibits attached to Defendants' Motions for Summary Judgment." 7 CR 4611.[9]

By granting AHC's motion for summary judgment, the trial court disposed of all of Sandra's claims against AHC. 7 CR 4623-24. To make the summary judgment order final, Sandra's claims against the company were severed into a separate cause, *In re: Estate of Jack Hiromi Ikenaga, Sr., Deceased; Sandra Ikenaga vs. ACCC Holding Corporation*, No. 2011-PC-4330-B, on October 6, 2014. 7 CR 4627.

## II. The Parties Reach a Settlement, and the Trial Court Enters a Final Judgment.

In October 2014, the parties entered into a settlement agreement that would end the litigation. 15 RR 3. The settlement agreement was dictated into

---

[9] This is contrary to appellant's assertion that the trial court improperly excluded and failed to consider "evidence properly before the [c]ourt."

the record, and all of the parties approved of its terms. 15 RR 3-8, 23-25.[10] As it relates to the issues raised by Sandra in this appeal, the parties agreed that (1) "any alleged will of Jack Ikenaga, Sr. is null and void and of no effect"; (2) Sandra "will withdraw objection and opposition to AHC's claim against the estate for approximately $489,000.82"; (3) Sandra "will withdraw objection and opposition to Christine Ikenaga's claim against the estate for approximately $200,000.00"; (4) Sandra would return a Lexus car owned by AHC back to it; and (5) Sandra would indemnify AHC and the estate. 15 RR 5-6, 8, 15, 21, 22.

The settlement also required appellees to prepare a written agreement that would be signed by all parties. 15 RR 5. Formal documents were prepared, but Sandra refused to sign them. 16 RR 1; 17 RR 1. Given the impasse, appellees sought entry of a final judgment based upon the settlement agreement. 16 RR 1-2.

The trial court held a hearing on the appellees' motion to enter judgment. At that hearing, Sandra's counsel confirmed that the proposed judgment correctly tracked the settlement agreement read into the record two months earlier. 17 RR 1, 3, 5 ("Otherwise we do concur that the judgment that's being presented by the defendants does track the October 7th court-recited agreement."). Further, to the extent that there were any variations or

---

[10] While under oath, and after a lengthy explanation by the trial court, Sandra affirmed on the record that she was in agreement with the settlement terms. 15 RR 23-24.

changes made by appellees after the judgment was first presented to Sandra's counsel, Sandra's counsel agreed to those changes. 17 RR 8-9 ("We've reviewed the changes. They are acceptable.").

Although the judgment correctly reflected the settlement terms, Sandra sought additional relief during the hearing on the motion to enter judgment. The settlement agreement read into the record required Sandra to return a Lexus that was owned by AHC. 15 RR 15. But it was later revealed that Sandra was in possession of two Lexus cars owned by AHC, a 2007 model and a 2010 model. *See* 17 RR 3-4. The final judgment required Sandra to return both cars. 7 CR 4679. Sandra asserted that she had paid for the 2010 Lexus, and she asked that she be permitted to keep it. 17 RR 3-4. The trial court signed the final judgment presented by appellees without addressing Sandra's request. 17 RR 8-9.

## III. Sandra Willingly Accepts the Benefits Conferred to Her Under the Final Judgment.

In accordance with the settlement agreement, the final judgment set forth the funds and property that were to be distributed to Sandra. 7 CR 4683-84. She was to receive a series of payments from the estate that would ultimately total $5,000,000.00. 7 CR 4683. The first payment was to be paid within 7 days after the judgment was signed. 7 CR 4683. That $1,000,000.00 payment was to be paid by two cashier's checks, one made payable to Sandra for $385,189.95 and the other to her lawyer's trust account for $614,810.05. 7

CR 4683. Sandra was then to receive $2,000,000.00 by 5 p.m. on or before December 31, 2014. 7 CR 4683.

Sandra willingly accepted the first payment during the hearing on the motion to enter the final judgment. 15 RR 12-13. She was presented with and accepted two cashier's checks at that time. 15 RR 13.

The final judgment also required Sandra to return a number of items, including Jack Sr.'s ashes. 7 CR 4686. During the latter half of the hearing on the motion to enter judgment, it was revealed that Sandra had previously disposed of the ashes in the Gulf of Mexico at Port Arthur, even though she did not mention this fact during the settlement negotiations. 15 RR 28, 41, 42.

Obviously displeased with Sandra's apparent breach of the settlement agreement, appellees sought to stay the December 2014 $2,000,000.00 payment so that they could conduct discovery regarding Sandra's breach of the agreement and to determine whether her lawyers were aware of the breach. 19 RR 3; 7 CR 4344. Relatedly, appellees filed motions to disqualify Sandra's lawyers. 7 CR 4355. The trial court suspended the payment obligation pending a subsequent hearing on the motion to stay. 20 RR 5, 7; 7 CR 4689.

Sandra perfected an appeal on January 2, 2015. 7 CR 4414.

During a January 14, 2015 hearing, appellees formally abandoned the request for a stay with respect to the $2,000,000.00 payment. 20 RR 5. During that hearing, Sandra's counsel asked for a recess so that he could discuss the potential ramifications of accepting the payment on her appeal.

13

20 RR 7. After that recess, counsel confirmed that Sandra wanted to accept the payment. 20 RR 8. Sandra then continued to prosecute this appeal.

## SUMMARY OF THE ARGUMENT

The final judgment must be affirmed for multiple, independent reasons. Sandra is barred from challenging the final judgment because she has knowingly accepted benefits conferred by the judgment.

But, even if she had not accepted the benefits under the judgment, she failed to preserve any complaint regarding the final judgment's compliance with the settlement agreement. She did not raise any objection with the trial court regarding a material variance between the settlement agreement and the final judgment. She did the opposite; Sandra confirmed that the final judgment was in strict compliance with the settlement agreement. Finally, even if the issue had been preserved, the final judgment should still be affirmed because there is no material variance between the judgment and the settlement agreement.

The Court should reject Sandra's complaints regarding the trial court's interlocutory summary judgment orders. The final judgment is not based upon summary judgment rulings. Further, even if the judgment was based upon summary judgment rulings, including evidentiary objections, Sandra has not shown that the trial court abused its discretion. Sandra has also not shown harm flowing from the exclusion of certain summary judgment evidence. Sandra relies solely upon a series of conclusory statements in arguing that the

14

trial court erred in sustaining objections and granting summary judgment. Ultimately, Sandra's misguided argument provides no basis for the Court to reverse.

## ARGUMENT

## I. The Final Judgment Must Be Affirmed.

### A. Sandra Has Waived the Ability to Challenge the Final Judgment By Accepting the Benefits of That Judgment.

It is well settled that an appellant cannot appeal a final judgment after having accepted the benefits conferred by that judgment. *Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002); *Leedy v. Leedy*, 399 S.W.3d 335, 339 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Sandra has already accepted the benefits of the final judgment that she now seeks to set aside. Accordingly, the Court must affirm.

Sandra accepted a $1,000,000.00 payment on December 5, 2014, during the hearing on appellees' motion to enter judgment. 17 RR 13. She then accepted a $2,000,000.00 payment in January 2015, knowing full well that a payment could adversely affect this appeal. 20 RR 8. In that regard, Sandra's counsel made the following representation to the trial court:

> Your Honor, on behalf of my client, I discussed with her the legal ramifications of having $2 million and accepting that as part of this judgment. And given the totality of the facts and circumstances, we discussed that, and my client is inclined to have that go ahead and be transferred to her directly. We've provided the routing number and account number we would like it to be transferred to. We would like to have that transferred as soon as possible, within two to three days at most.

20 RR 8.

In addition to accepting $3,000,000.00, she also accepted other property that was awarded to her in the settlement agreement. *See* 19 RR 33-34. This property includes real property, automobiles, construction equipment, boats, furniture, and other personal property. 7 CR 4684. Indeed, Sandra acknowledged that the parties had already begun performance under the agreement. 7 CR 4351. Thus, Sandra is estopped from challenging the final judgment. *See Leedy*, 399 S.W.3d at 339.[11]

## B. Sandra Did Not Preserve Her Complaint That the Final Judgment Does Not Comply With the Settlement Agreement.

An appellant cannot complain on appeal if she did not first make her objection known to the trial court and obtain a ruling on that objection. TEX. R. APP. P. 33.1(a). "The complaint must identify the objectionable matter or event sufficiently for the opposite party to cure any deficiency and for the trial judge to know the nature of the alleged error." *PGP Gas Prods., Inc. v. Fariss*, 620 S.W.2d 559, 560 (Tex. 1981). Any unpreserved complaint is waived. *See id.*

Sandra's principal complaint on appeal is that the final judgment does not strictly follow the settlement agreement that was dictated into the record. In her opening brief, Sandra identifies four areas in which she believes there is

---

[11] The Court may consider this brief as also presenting a motion to dismiss Sandra's appeal. *See, e.g., Leedy*, 399 S.W.3d at 339.

a variance between the settlement agreement and the final judgment: (1) the enforceability of Jack Sr.'s will, (2) Sandra's objections to AHC's and Christine's claims against the estate, (3) Sandra's right to seek indemnity from appellees, and (4) a Lexus car.

With respect to the first three issues, Sandra did not raise any objections with respect to them in the trial court. Instead, she confirmed—through her lawyers—that there was no variance between the final judgment and settlement agreement. Sandra's counsel confirmed that the proposed final judgment correctly reflected the settlement agreement's terms. 17 RR 1; *see also id.* at 2 ("It does track the transcript and the agreement of the parties. And so what's being presented to you is the only document that I think that accurately actually tracks the transcript."); *id.*at 3 ("Yes. I will confirm, as Mr. Ostrom has also, that the judgment that is being submitted by defendants does appear to track the court-recited agreement in every respect . . . ."). Because she did not raise any objection with the trial court, Sandra has waived the ability to challenge those portions of the final judgment. *See PGP Gas Prods., Inc.*, 620 S.W.2d at 560.[12]

---

[12] Even after the final judgment was signed, Sandra's counsel continued to represent to the trial court that the judgment correctly tracked the settlement agreement. 19 RR 8 (". . . Mr. Ford's office provided a revised judgment that specifically tracked the agreement, and that's the judgment the Court's entered and that's the judgment that the parties have begun performance under.").

## C. There Is Strict Compliance Between the Final Judgment and the Settlement Agreement.

Where a final judgment is based upon a settlement agreement, the judgment must strictly comply with the agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam). Strict compliance requires that the resulting judgment not conflict with the settlement agreement's terms. *Rosales v. Rosales*, No. 04-05-00906-CV, 2006 WL 2955602, at *2, 3 (Tex. App.—San Antonio Oct. 18, 2006, pet. denied) (mem. op. on reh'g). Clerical errors and textual deviations that do not affect the substance of the agreement do not require reversal. *Id.*; *see also McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex. App.—Dallas 1992, writ denied). Further, a trial court is not barred from disposing of issues in a final judgment that were not resolved by the parties' settlement agreement. *See Rosales*, 2006 WL 2955602, at *4.

### 1. The settlement agreement specifically referenced Jack Sr.'s will and Christine's claim against the estate.

Not only did Sandra not raise any complaint regarding the first two issues at the time the final judgment was signed, but these issues were specifically covered in the settlement agreement. The parties stipulated and agreed "that any alleged will of Jack Ikenaga, Sr. is null and void and of no effect." 15 RR 5. Further, Sandra agreed to "withdraw objection and opposition to Christine Ikenaga's claim against the estate for approximately $200,000." 15 RR 16.

18

There is no substantive variance between the settlement agreement and final judgment. A mere deviation in words is insufficient for reversal if there is no significant alteration in the original settlement terms or where the parties' intent is not undermined. *Rosales*, 2006 WL 2955602, at **2, 3. In the settlement agreement, the parties contemplated that the final document "will incorporate other terms and conditions." 15 RR 5. Thus, the parties acknowledged that the final agreement would not be a word-for-word copy of the settlement agreement.

Other than point to small word changes, Sandra has not shown a substantive deviation with respect to provisions in the final judgment concerning Jack Sr.'s will. The parties intended to distribute the estate according to the settlement agreement and not under the terms of Jack Sr.'s will. *See* 15 RR 5. While the corresponding provision in the final judgment is a whole paragraph, there is no substantive conflict between it and the settlement agreement. The final judgment only provides that the parties are barred from making a claim against the estate under the will or trust, and that any right to estate property derives solely through the final judgment. 7 CR 4677. This is the result that the parties contemplated in the settlement agreement. *See* 15 RR 5; *see also Salmon v. Salmon*, 395 S.W.2d 29, 32 (Tex. 1965) ("Under our law a family settlement in which all of the heirs and beneficiaries agree that a purported will shall not be probated is valid and enforceable.").

There is likewise no substantive deviation with respect to Sandra withdrawing her opposition to Christine's claim against the estate. The final judgment provides that Sandra's "objection to Christine's claim against the Estate in the amount of $200,000.00 ("Christine's Claim") [is] hereby overruled <u>to the extent not already withdrawn</u> by Sandra." 7 CR 4679 (emphasis added). The settlement agreement provided that Sandra would "withdraw objection and opposition to Christine Ikenaga's claim against the estate . . . within 14 days." 15 RR 6.

Whether Sandra's opposition to Christine's claim is overruled to the extent not yet withdrawn or simply withdrawn, the result is the same: Christine's claim can be paid. The payment of Christine's claim does not affect Sandra's substantive rights under the settlement agreement. Separate and apart from Christine's claim, the settlement agreement identifies the money and property that Sandra is to receive from the estate and it is not contingent upon the amount paid to Christine. At the end of the day, and irrespective of the particular procedural means to be used, Sandra agreed to not oppose Christine's claim. Thus, the final judgment complies with the settlement agreement and should be affirmed.

### 2. Sandra was not entitled to any indemnification by virtue of the settlement.

Sandra complains that the final judgment does not grant her any right of indemnification against the appellees. But Sandra was not entitled to

20

indemnity from any of the appellees. There is no mention of indemnification in the handwritten settlement agreement. 21 RR Exhibit D-2. Further, based upon the terms dictated into the record, only AHC and the estate were entitled to indemnification. 15 RR 15 (providing that "there will be a full release and indemnity agreement by Sandra and the estate as to all claims"); *see also id.* 22.

The sole basis for Sandra's assertion that she was entitled to indemnity appears to be a misstatement by the trial court. The settlement agreement included a liquidated damages clause. 15 RR 5. But it was clarified on the record that AHC and Bailey would not be subject to that clause and AHC would obtain a full release and indemnity. 15 RR 15, 20, 21. Nonetheless, the trial court appears to have conflated Sandra's indemnity obligations with the liquidated damages clause on the record.

> [Counsel for Bailey]: Judge, similarly, I think it needs to be clarified that there would be no liquidated damages provisions applying to the administrator.
>
> THE COURT: So then the indemnity agreement that was referenced is between the siblings, Mr. Ikenaga, Jr., and Ms. Ikenaga. Correct?
>
> [Counsel for Sandra]: Correct.
>
> [Counsel for AHC]: Well, and as to any claims by Ms. Ikenaga or the estate or by, through, or under them, against AHC also.
>
> THE COURT: Okay.
>
> [Counsel for Sandra]: I'm not sure what that means.

. . . .

[Counsel for Jack Jr.]: I think what he's speaking to is the damages clause. That really flows between the siblings and Ms. Ikenaga.

[Counsel of Sandra]: Ms. Ikenaga.

[Counsel for Jack Jr.]: Back and forth between them. That doesn't involve any of the other parties on the liquidated damages.

15 RR 21.

Regardless of the trial court's comments, the record does not support Sandra's argument that she was ever entitled to indemnity. No provision was included in the final judgment, and Sandra concurred that it correctly tracked the settlement agreement. 17 RR 1, 2, 3. Thus, the final judgment should be affirmed.

### 3. Sandra was not entitled to any Lexus by virtue of the settlement.

The only question actually raised in the trial court with respect to the final judgment relates to the 2010 Lexus car. The settlement agreement required Sandra to return a 2007 Lexus owned by AHC. 15 RR 13, 15. The final judgment requires Sandra to return the 2007 Lexus as well as a 2010 Lexus that was also owned by AHC. 7 CR 4679.

After conceding that the final judgment presented by appellees complied with the terms of the settlement agreement, Sandra requested that she be permitted to keep the 2010 Lexus that was also in her possession. 17 RR 3-4.

The trial court implicitly denied that request when it signed the final judgment.

Sandra's request for a Lexus car does not create a conflict between the settlement agreement and the final judgment. Sandra was not entitled to any Lexus car by virtue of the settlement. Under the terms of the settlement agreement, Sandra was awarded several vehicles. 15 RR 7-8. But she was not awarded a 2007 Lexus or a 2010 Lexus. *See* 15 RR 7-8. Sandra gave up all right and title in the estate as part of the settlement, and she had no active claims against AHC by the time the judgment was entered. 15 RR 5, 14.[13]

If anything, Sandra's post-settlement request for the car created a conflict. She was seeking to open up the settlement agreement to insert new terms by asking for additional property. *See* 15 RR 4. Sandra's counsel even acknowledged that the request was actually an attempt "to renegotiate additional relief." 19 RR 22. Thus, the final judgment must be affirmed.

## II. The Court Does Not Review the Trial Court's Summary Judgment Orders in Determining Whether the Final Judgment Should Be Reversed.

Sandra willfully agreed to settle her claims against appellees, promising to dismiss her claims with prejudice. 15 RR 4. A final judgment was rendered

---

[13] There was no legal basis for the trial court to have awarded Sandra the 2010 Lexus because it was owned by AHC and not by Jack Sr.'s estate. By the time that she made her request for the 2010 Lexus, Sandra no longer had any active claims against AHC. Summary judgment had already been granted as to all of Sandra's claims against AHC. 7 CR 4623. Those claims were severed into a separate cause number, and Sandra had agreed not to appeal the summary judgment. 15 RR 14. Thus, without any active claim, there would have been no basis for Sandra to deprive AHC of its property, and she cannot show any harm flowing from the final judgment.

on the settlement agreement and not on any summary judgment order. *See* 7 CR 4672-73. Nonetheless, Sandra believes that the trial court should review the propriety of the summary judgment orders in determining whether to reverse the final judgment. The summary judgment orders and any evidentiary objections are irrelevant to this appeal.

The Court has a narrow inquiry in this case: does the final judgment strictly comply with the settlement agreement? If yes, the Court must affirm. *See R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet.). If no, the Court may reform the judgment if the variance is a clerical error or some other variance that does not affect the substance of the settlement agreement. *See Rosales*, 2006 WL 2955602, at *2; *McLendon*, 847 S.W.2d at 610. The Court may reverse only if there is a material variance between the final judgment and the settlement agreement. But a reversal in that instance does not mean that the settlement agreement is set aside. Rather, the case will "be remanded for entry of a judgment in accordance with the parties' settlement agreement." *Rosales*, 2006 WL 2955602, at *5; *see also Clanin v. Clanin*, 918 S.W.2d 673, 678 (Tex. App.—Fort Worth 1996, no writ) ("We remand the cause to the trial court for the limited purpose of reforming the decree and entering judgment in accordance with the agreement reached by the parties . . . .").

### A. Sandra Misreads the Trial Court's Order; It Did Consider Much of Sandra's Summary Judgment Evidence When It Ruled on Appellees' No-Evidence Motions for Summary Judgment.

Sandra erroneously argues that the trial court excluded her summary judgment evidence in response to appellees' objections.[14] As it relates to her response to the no-evidence motions for summary judgment,[15] Sandra's primary complaint appears to be that the trial court did not consider her references to evidence filed in support of appellees' motion for partial summary judgment.[16]

Sandra asserts in her brief that the trial court did not consider deposition excerpts attached to the appellees' motion for partial summary judgment because they were not authenticated. Br. of Appellant 27 ("The disturbing part of the Court's ruling is that the vast majority of the defendant's summary judgment evidence was in the form of deposition excerpts."). She also asserts that the trial court should have considered affidavits and exhibits to those affidavits that were filed in support of appellees' partial motion for summary judgment. Br. of Appellant 28.

---

[14] Appellees objected to Sandra's failure to plead the discovery rule. 13 RR 3. While this non-evidentiary objection is discussed in passing in Sandra's brief, it is not directly addressed in the statement of issues presented or in the argument. *See* Br. of Appellant 8, 26. Sandra has not directed the Court to any authority that would have permitted her to amend her pleadings during the summary judgment hearing. Accordingly, appellees conclude that Sandra's appellate issue is limited to the exclusion of evidence and does not include any issue regarding the sufficiency of her pleadings.

[15] Other than discussing the appellees' partial motion for summary judgment and standards for a traditional summary judgment, Sandra does not present any argument establishing why the trial court erred in granting the motion.

[16] Sandra does not address the summary judgment granted in AHC's favor.

Sandra has misstated the trial court's order. In ruling upon the appellees' no evidence motions for summary judgment, the trial court made it clear that it was considering depositions attached to Sandra's response "as well as any exhibits attached to Defendants' Motions for Summary Judgment." 7 CR 4611. Even after considering that evidence, the trial court granted the appellees' motions. 7 CR 4611. Thus, Sandra's third point of error must be overruled because the trial court did not actually make the ruling that Sandra discusses in her principal brief.

**B.    Even If the Court Was Required to Review the Merits of the Summary Judgment Orders, Sandra Has Waived Any Issue Regarding the Summary Judgments.**

"'When a summary judgment movant objects to summary judgment evidence proffered by the nonmovant, the burden lies upon the nonmovant to request relief under rule 166a(f), including a continuance or the opportunity to cure any formal defects in the nonmovant's summary judgment evidence.'" *Birmingham-Queen v. Whitmire*, No. 04-05-00646-CV, 2006 WL 1539587, at *2 (Tex. App.—San Antonio June 7, 2006, no pet.) (mem. op.). The trial court's denial of such a request is reviewed for an abuse of discretion. *See Tri-Steel Structures, Inc. v. Baptist Found. of Tex.*, 166 S.W.3d 443, 447 (Tex. App.—Fort Worth 2005, pet. denied); *see also General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding). An order sustaining an objection to summary judgment evidence is also subject to an abuse of discretion standard of review. *Doncaster v. Hernaiz,* 161 S.W.3d 594, 601

(Tex. App.—San Antonio 2005, no pet.); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).

As has been discussed above, the trial court did not exclude the evidence that Sandra believes was excluded. But even if the trial court had excluded such evidence, Sandra has not demonstrated an abuse of discretion by the trial court. Sandra presents no argument regarding the relevant standard of review or authority demonstrating an abuse of discretion, either by denying a motion for continuance or in excluding summary judgment evidence. Indeed, Sandra did not seek a continuance of the hearing on the summary judgment motions. Thus, any appellate issue challenging the exclusion of summary judgment evidence must be overruled.

But even if Sandra had cleared the first hurdle and established an abuse of discretion, the Court would still have to affirm because her briefing is inadequate. Although a trial court may have abused its discretion in excluding summary judgment evidence, the appellant must still "demonstrate that the exclusion probably resulted in an improper judgment." *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 824 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also* TEX. R. APP. P. 44.1. In doing so, the appellant must "demonstrate that the judgment turns on the particular evidence excluded." *Chandler*, 376 S.W.3d at 824.

Sandra's briefing does not contain any analysis regarding the elements challenged by appellees. There is likewise no discussion of the particular

evidence that would have raised a fact issue on her claims. She relies solely upon conclusory statements that she raised a fact question on her claims. These conclusory statements are supported by little to no citations to the record. *See* Br. of Appellant 24-26. Accordingly, Sandra is not entitled to any relief from the Court. *See Stephens v. Dolcefino*, 126 S.W.3d 120, 128 (Tex. App.—Houston [1st Dist.] 2003) (finding briefing waiver where appellant fails to discuss any of the individual elements challenged by appellee in a motion for summary judgment), *pet. denied*, 181 S.W.3d 741 (Tex. 2005); *see also* Tex. R. App. P. 38.1(h).[17]

## III. Conclusion and Prayer.

The final judgment must be affirmed. The Court should conclude that Sandra waived any ability to challenge the final judgment by accepting the benefits conferred by the judgment. The Court may also find that Sandra waived any complaint regarding the final judgment because she conceded on the record that the final judgment complied with the settlement agreement. In sum, Sandra has not brought forth any legal theory or authority that would require the judgment to be reversed.

---

[17] Sandra also makes other passing complaints in her briefing regarding the summary judgment hearing, including a complaint that the trial court allowed expert testimony from a Georgia attorney. Br. of Appellant 23-24. Mr. Donsbach was not an expert witness, but he was an attorney of record for Jack Jr. and had been admitted *pro hac vice*. 7 CR 4602. But, even if he had been admitted as a witness, Sandra waived any right to complain on appeal because she did not present an objection to the trial court. *See* Tex. R. App. P. 33.1(a).

WHEREFORE, PREMISES CONSIDERED, Appellees Jack H. Ikenaga, Jr., Nancy Sumners, Christine Ikenaga, Patrick Gasiorowski, and Eric J. Goodman respectfully pray that the Court affirm the final judgment and grant other and further relief to which they may be justly and equitably entitled.

Respectfully submitted,

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III
State Bar No. 24041135
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, Texas 78209
Telephone: (210) 775-0882
Fax: (210) 826-0075
sam@hdappeals.com

William H. Ford
State Bar No. 07246700
Veronica S. Wolfe
State Bar No. 24066095
FORD MURRAY, PLLC
10001 Reunion Place, Suite 640
San Antonio, Texas 78216
Telephone: (210) 731-6400
Fax: (210) 731-6401
bill.ford@fordmurray.com
veronica.wolfe@fordmurray.com

Shelayne Clemmer
State Bar No. 24044733
Kevin M. Young
State Bar No. 22199700
PRICHARD HAWKINS YOUNG, LLP
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone: (210) 477-7400
Fax: (210) 477-7450 – Fax
sclemmer@phy-law.com
kyoung@phy-law.com

ATTORNEYS FOR APPELLEES
JACK H. IKENAGA, JR., NANCY
SUMNERS, CHRISTINE IKENAGA,
PATRICK GASIOROWSKI, AND
ERIC J. GOODMAN

30

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4, the undersigned certifies that the foregoing computer-generated brief contains 7,110 words.

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served in accordance with the Texas Rules of Appellate Procedure on the 23rd day of September, 2015, to the following:

David L. McLane                             *Via email/eservice*
ATTORNEY AT LAW
9901 IH-10 West, Suite 695
San Antonio, Texas 78230
dlmclanelaw@yahoo.com

Roger L. McCleary                           *Via email/eservice*
Nicholas Stepp
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Boulevard
Suite 2500
Houston, Texas 77056
rmccleary@bmpllp.com

Mark Stanton Smith                          *Via email/eservice*
HEARD & SMITH, L.L.P.
3737 Broadway, Suite 310
San Antonio, Texas 78209
atysmith@heardandsmith.com

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III

31

# APPENDIX

A.     Final Judgment

B.     Affidavit of Jack Ikenaga, Jr. filed in support of appellees' partial motion for summary judgment, which was omitted from the clerk's record.

# APPENDIX A

NO. 2011-PC-4330

| | | |
|---|---|---|
| IN RE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JACK HIROMI IKENAGA, SR., | § | NUMBER ONE |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

NO. 2011-PC-4330-A

| | | |
|---|---|---|
| IN RE: ESTATE OF | § | IN THE PROBATE COURT |
| JACK HIROMI IKENAGA, SR., | § | |
| DECEASED; | § | |
| SANDRA IKENAGA | § | |
| | § | |
| V. | § | NUMBER ONE |
| | § | |
| JACK IKENAGA, JR., WILLIAM D. | § | |
| BAILEY, AS TEMPORARY | § | |
| ADMINISTRATOR OF THE ESTATE OF | § | |
| JACK HIROMI IKENAGA, SR., | § | |
| DECEASED, NANCY SUMNERS, | § | |
| CHRISTINE IKENAGA, PATRICK | § | |
| GASIOROWSKI, ERIC J. GOODMAN, | § | |
| AND ACCC HOLDING CORPORATION | § | BEXAR COUNTY, TEXAS |

NO. 2011-PC-4330-B

| | | |
|---|---|---|
| IN RE: ESTATE OF | § | IN THE PROBATE COURT |
| JACK HIROMI IKENAGA, SR., | § | |
| DECEASED; | § | |
| SANDRA IKENAGA | § | |
| | § | |
| V. | § | NUMBER ONE |
| | § | |
| ACCC HOLDING CORPORATION | § | BEXAR COUNTY, TEXAS |

## FINAL JUDGMENT

On October 7, 2014, this Court heard the above-styled and numbered causes. All parties appeared by and through their attorneys of record and announced that all matters and controversies between them had been compromised and settled by agreement, and the terms of such agreement were read into the Court's record and approved by all parties

539083.1

("Settlement Agreement"). The Court found that the Settlement Agreement was just and fair, and rendered judgment consistent with the parties' Settlement Agreement in open court and on the record.

On December 5, 2014, this Court heard the parties' respective motions to enter a written final judgment in the above-styled and numbered causes, as well as various objections and arguments. The Court finds that, notwithstanding any objections, motions and/or arguments by the parties, this Final Judgment strictly complies with Settlement Agreement and this Court's oral rendering of judgment on October 7, 2014. Therefore, the Court hereby incorporates its rulings on such objections into this Final Judgment, and IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

## A. PARTIES AND DEFINITIONS

The Court hereby adopts the following definitions for purposes of this Final Judgment:

1. "Decedent" as used herein shall mean Jack H. Ikenaga, Sr., who died on September 30, 2011, and whose estate is made the subject of the above-entitled and numbered causes.

2. Sandra Ikenaga ("Sandra") is the Decedent's widow and a Plaintiff in one or more of the above-entitled and numbered causes.

3. Jack H. Ikenaga, Jr. ("Jack") is a child of the Decedent and a Defendant in one or more of the above-entitled and numbered causes.

4. Nancy Sumners ("Nancy") is a child of the Decedent and a Defendant in one or more of the above-entitled and numbered causes.

5. Christine Ikenaga ("Christine") is a child of the Decedent and a Defendant in one or more of the above-entitled and numbered causes.

6. Patrick Gasiorowski ("Patrick") is a grandchild of the Decedent and a Defendant in one or more of the above-entitled and numbered causes.

7. Eric Goodman ("Eric") is Sandra's son and a Defendant in one or more of the above-entitled and numbered causes.

8. ACCC Holding Corporation ("AHC") is a Delaware corporation and a Defendant in one or more of the above-entitled and numbered causes.

9. "William D. Bailey" ("Bailey" or "Temporary Administrator"), is the Temporary Administrator of the Decedent's estate as defined by the Texas Estates Code Sec. 22.012 ("Estate") and is a Defendant in his capacity as Temporary Administrator of the Estate in one or more of the above-entitled and numbered causes.

10. Amegy Bank, N.A. ("Amegy Bank") is a Defendant in one or more of the above-entitled and numbered causes.

11. "Sandra" or "Plaintiff" as used herein shall include Sandra, and her "Derivative Claimants" and "Representatives" as defined below.

12. "Ikenaga Defendants" shall mean Jack, Nancy, Christine, Patrick, and Eric, collectively and shall include any and all of their "Derivative Claimants" and "Representatives" as defined below.

13. "Defendants" as used herein shall mean all the individuals and entities identified hereinabove as a Defendant and who are parties to this Agreement, and shall include any and all of their "Derivative Claimants" and "Representatives" as defined below. Although the Lawsuit is only filed against Bailey in his capacity as Temporary Administrator, for purposes of this Final Judgment, the term "Defendants" refers to Bailey in his capacity as Temporary Administrator and in his individual capacity.

14. "Derivative Claimants" shall mean any person or entity acting by, through, or under an individual or entity (including by reason of marriage or family relationships of any such person).

15. "Entities" shall mean those persons, associations, and/or entities (whether now in existence or not), and which are or were formerly owned or controlled, in whole or in part, directly or indirectly, by an individual or entity, or any Derivative Claimant, and their respective entities, past and present employers, employees, directors, shareholders, officers, assigns, predecessors, successors, attorneys, representatives or agent of such parties and/or entities.

16. "Lawsuit" shall mean all causes of action asserted or which could be asserted by any party in the above-entitled and numbered causes.

17. "Representatives" of a party, parties, or entity shall mean and include all of that party's or parties' or entity's past and present principals, agents, servants, employees, attorneys, accountants, appraisers, brokers, service providers, consultants, experts, partners (both general and/or limited), equity participants, officers, directors, shareholders, parent companies, subsidiaries, affiliates, predecessors, successors, assigns, estates, beneficiaries, executors, administrators, guardians, conservators, heirs, devisees, legatees, trustees, and other personal representatives.

18. "Effective Date" means the date this Final Judgment is signed.

19. The "1993 Will" means the Last Will of Jack H. Ikenaga allegedly executed by the Decedent on August 16, 1993, and filed for probate in Cause No. 2011 PC 4330, in Bexar County, Texas.

20. "Sandra's Attorneys" means any and all attorneys (and their respective law firms) who have represented Sandra in the Lawsuit or any matter ancillary to the Lawsuit.

21. "Defendants' Attorneys" means any and all attorneys (and their respective law firms) who have represented any of the Defendants in the Lawsuit or any matter ancillary to the Lawsuit.

22. The "1993 Trust" means the "Jack H. Ikenaga Declaration of Trust dated August 16, 1993."

23. "Decedent's Entities" shall mean the Decedent and those persons, associations, trusts, and/or entities (whether now in existence or not), and which are or were formerly owned or controlled, in whole or in part, directly or indirectly, by the Decedent and the past and present employers, employees, directors, shareholders, officers, assigns, predecessors, successors, attorneys, representatives or agents of such entities.

## B. NO OUTSTANDING CLAIMS

1. Based upon the testimony and representations of the parties, the court finds that there are no actual and/or potential claims, demands, suits, causes of action, charges and grievances by, through, or under any party, which concern or relate in any way, directly or indirectly, to the parties, the property of the Estate, or the Lawsuit, except for matters as may be expressly excluded in this Final Judgment.

2. Based upon the testimony and representations of the parties, the court finds that no party has assigned, authorized or transferred (in any way, whether directly or indirectly) any claims, demands, suits, causes of action, charges, or grievances of any kind or character, which any party has or may have had prior to and including the

Effective Date against any of the Defendants or the Estate.

3.    Based upon the testimony and representations of the parties, the court finds that no party has or owns any part of any actual or potential claims, demands, suits, causes of action, charges, or grievances of any kind or character against the Defendants or the Estate which are not subject to and disposed of by this Final Judgment.

### C. DISPOSITION OF ESTATE

1.    Decedent's Testamentary Instruments: The Court finds that neither the "1993 Will" nor the "1993 Trust" are valid testamentary documents and further finds that no party is aware of any unrevoked will or trust that Decedent may have executed. Therefore, the court orders that each party (i) shall refrain forever from directly or indirectly seeking to have the 1993 Will or any other will or purported will of the Decedent admitted to probate by any court in any jurisdiction whatsoever, (ii) shall never use, represent or rely upon the 1993 Will or 1993 Trust as evidence of title to any interest such party may claim in the Estate or Estate property, (iii) shall never claim title to any of the Decedent's property, benefits, insurance, contracts, or other rights SAVE and EXCEPT as provided by this Final Judgment.

2.    The Estate shall pass as expressly determined by this Final Judgment under the laws of intestate succession and the family settlement doctrine of the state of Texas as construed, determined and settled according to this Final Judgment.

3.    An heirship determination shall order the partition and distribution of the Estate, subject to the administration of the Estate, as follows:

   a.    *Distribution And Partition To Sandra:* From the Estate, Sandra shall receive (or has already received) the property and sums (subject to any liens, encumbrances, and taxes) identified on *Exhibit A,* which is attached to this Final Judgment and fully incorporated as if restated herein, as and in full satisfaction of all of her actual and/or potential entitlements, rights, claims and/or other interests in or to: (i) Sandra's one-half (1/2) interest in the community property estate of the Decedent and Sandra; (ii) an intestate share of the Estate; (iii) any family allowance, marital share, forced share, homestead rights, and any allowances in lieu thereof; and, (iv) any and all other rights, interests or potential entitlements in the remainder of the estate of the Decedent. The Ikenaga Defendants and Bailey are ordered to execute formal conveyance documents, for any titled property identified in paragraph 3 of *Exhibit A* within their respective

539083.1                                        6

control, to Sandra within thirty (30) days following the date the Court enters an order on the heirship determination.

b. *Specific Property Passing To Ikenaga Defendants:* The Ikenaga Defendants shall receive from Sandra all items identified on *Exhibit B,* which is attached to this Final Judgment and fully incorporated as if restated herein, subject to the following terms:

1. Sandra shall deliver to the Temporary Administrator (unless otherwise noted) all items identified on *Exhibit B,* which are in her possession or subject to her control, no later than 5:00 p.m. on the seventh (7th) day following the Effective Date. The Court orders that any and all claims or potential claims belonging to Sandra or her Attorneys against the property on *Exhibit B* are hereby extinguished and/or dismissed with prejudice.

2. If Sandra is not in possession or control of one or more of the items on *Exhibit B,* she is hereby ordered to execute a sworn statement attesting to the fact that she does not have such property in her possession or control and shall deliver that sworn statement to the Temporary Administrator and the Ikenaga Defendants no later than 5:00 p.m. on the seventh (7th) day following the Effective Date.

c. The Estate, SAVE and EXCEPT ONLY the property listed on *Exhibit A* and *Exhibit B (*and including without limitation any property that would otherwise pass to Sandra under any will, contract, or the laws of intestate succession), shall pass in equal undivided interests to the Ikenaga Defendants, subject to the administration of the estate. The Court orders that any and all claims or potential claims belonging to Sandra or her Attorneys against the property of the Estate are hereby extinguished and/or dismissed with prejudice. Plaintiff shall execute formal conveyance documents to the Ikenaga Defendants within thirty (30) days following the date the Court enters an order on the heirship determination.

d. *AHC Stock:* The Court orders that the 21.02 shares of AHC stock in the Estate be sold and transferred to AHC or its designee, identified in writing by AHC, at the set price of $86,310.00/share.

3. <u>Administration of Estate:</u>

a. *Control:* Jack, or his designee, will make all decisions related to the Estate's administration after the Effective Date, subject to Court approval and that of the Temporary Administrator, when necessary.

b. *Estate's Payment of Claims:* The Court finds that Sandra's objection to AHC's claim against the Estate in the amount of $489,060.82 ("AHC's

Claim") and her objection to Christine's claim against the Estate in the amount of $200,000.00 ("Christine's Claim") are hereby overruled to the extent not already withdrawn by Sandra. The Temporary Administrator or his successor shall pay the AHC Claim to AHC and Christine's Claim to Christine in the due course of the Estate's administration, and upon approval of the claim by the court as required by the Texas Estates Code, provided, however, such claim shall be paid in full no later than 180 days following the Effective Date.

c. *Cooperation*: All parties are ordered to sign and deliver any and all necessary papers, documents, tax returns, transfers, deeds, bills of sale, and any other document requested in order to effectuate the provisions and purpose of this Final Judgment. Sandra is ordered to fully cooperate and comply with any request from the Court and/or any Defendant with regard to any matter related to the Estate, including (without limitation) tax matters. Specifically, and without limiting the forgoing provision in any way, Sandra is ordered to deliver to AHC, through its representative Ross Bennett, the 2007 Lexus automobile (VIN JTHGL46F075002870) and 2010 Lexus automobile (VIN JTHGL1EF2A5041600) titled in ACCC Insurance Company's name along with all sets of keys and the license plates to such automobiles no later than 5:00 p.m. on the seventh (7th) day following the Effective Date.

4. <u>Disposition of Related Actions</u>: With respect to Cause No. 2011-PC-4330-B, styled *Sandra Ikenaga v. ACCC Holding Corporation*, Sandra has voluntarily waived her appeal to the final judgment in such case and is hereby ordered not to file any motions or other documents which would challenge, affect, or impair the finality of such judgment.

5. <u>Sandra's Liability</u>: The court finds that Sandra is 100% responsible for any and all contractual, equitable, tax, or other liability associated with the property Sandra has received or will receive pursuant to the parties' Settlement Agreement and/or this Final Judgment, including (without limitation) all ad valorem taxes on such property owing for 2014, as well as any and all such liability associated with any property or liability Sandra failed to disclose to the Court and/or the Temporary Administrator.

6. <u>Liquidated Damages</u>: The Court hereby orders that if Plaintiff fails to timely satisfy any obligation owed to one of the Ikenaga Defendants pursuant to this Final Judgment, such Ikenaga Defendant shall provide written notice to Roland Colton of Sandra's breach and Sandra shall have ten (10) days to cure such breach ("Cure Notice"). If Sandra fails to cure such breach, the Ikenaga Defendant shall provide written notice to Roland Colton of such failure to cure ("Breach Notice") and Sandra shall deposit $1,000,000.00 into the Court's registry within thirty (30) days of the date Breach Notice is provided to Roland Colton, and those funds shall remain in the Court's registry until the Court renders a decision on the alleged breach and enters a conforming order. If Jack

fails to satisfy the obligations owed to Plaintiff as set forth in this Final Judgment, Roland Colton shall provide Cure Notice to Jack and Jack shall have ten (10) days to cure such breach. If Jack fails to cure such breach, Roland Colton shall provide Breach Notice to Jack and Jack shall deposit $1,000,000.00 into the Court's registry within thirty (30) days of the date Breach Notice is provided to Jack, and those funds shall remain in the Court's registry until the Court renders a decision on the alleged breach and enters a conforming order.

7. <u>Previous Transactions</u>. Sandra is hereby ordered to not make any claim for damages, interest in, or any type of equitable relief with regard to the formation, capitalization, ownership, transfers of interests in, operation, merger, termination or liquidation of any of the Decedent's Entities. To the extent Sandra has any such claims, those are hereby extinguished and dismissed with prejudice. The parties are ordered to cooperate as necessary to present proposed orders to this Court confirming the validity and nature of all prior transfers of ownership interests and assets of the Decedent's Entities.

8. <u>Attorneys' Fees:</u> Each Party shall be solely responsible for the payment of their respective attorneys' fees, court costs, expert witness fees, court reporter's fees, and all other expenses incurred on said Party's behalf as a result of or in connection with the Lawsuit, the Settlement Agreement and/or this Final Judgment, unless the Temporary Administrator and the Ikenaga Defendants determine that a portion of their attorney's fees and costs should be reimbursed from the Estate (and such agreement is approved by the Court). The Estate shall be responsible for the fees and expenses incurred by the Temporary Administrator. If it becomes necessary to assert any claim to enforce or defend the provisions of this Final Judgment, the prevailing Party shall be entitled to recover reasonable attorney's fees and other related litigation expenses from the non-prevailing Party.

### D. ALL CLAIMS AND POTENTIAL CLAIMS RESOLVED

1. Except as previously stated herein, and pursuant to the Settlement Agreement and representations of the parties, the Court hereby extinguishes and dismisses with prejudice all claims and potential claims arising out of the events made the subject of the Lawsuit which Sandra has or may have against any Defendant, against William D. Bailey in his individual capacity, and against the Decedent and/or the Estate. This includes all such claims and potential claims, whether known or unknown, and any suits, demands, causes of action, charges or grievances of any kind or character whatsoever, heretofore or hereafter accruing for or because of any matter done, omitted

or suffered to be done by any such party hereto prior to and including the date hereof, and in any manner (whether directly or indirectly) arising from or related to the Lawsuit, save and except for the representations, warranties, and obligations under this Final Judgment. Additionally, Sandra shall indemnify and hold AHC harmless from and against any and all claims arising out of or in connection with any matters that were or could have been raised in the Lawsuit. In the event Plaintiff breaches this Settlement Agreement, Plaintiff shall indemnify and hold AHC harmless from such breach.

2. Except as previously stated herein, and pursuant to the Settlement Agreement and representations of the parties, the Court hereby extinguishes and dismisses with prejudice all claims and potential claims arising out of the events made the subject of the Lawsuit which Defendants have or may have against each other and/or against Sandra. This includes all such claims and potential claims, whether known or unknown, and/or any suits, demands, causes of action, charges or grievances of any kind or character whatsoever, heretofore or hereafter accruing for or because of any matter done, omitted or suffered to be done by any such party hereto prior to and including the date hereof, and in any manner (whether directly or indirectly) arising from or related to the Lawsuit, save and except for the representations, warranties, and obligations under this Final Judgment. Additionally, the Estate shall indemnify and hold AHC harmless from and against any and all claims arising out of or in connection with any matters that were or could have been raised in the Lawsuit. In the event the Estate breaches this Settlement Agreement, the Estate shall indemnify and hold AHC harmless from such breach.

## E. NOTICE

Any notice required by this Final Judgment must (1) be in writing and (2) sent via certified mail to the party. Notices shall be deemed to have been timely made if received or postmarked before or at the time that notice is due. If Sandra changes her address at any point between the Effective Date and five (5) years from the Effective Date, she is ordered to notify the Temporary Administrator, or any subsequent administrator or executor of the Estate, and the Defendants by providing her new address no later than seven days after the change of address.

### F. RELIEF NOT GRANTED AND DATE OF JUDGMENT

With the entry of this Final Judgment, all of Sandra's claims have been addressed and all of her interest in the Estate has been fully and finally disposed of and she is no longer an "interested person" as defined by the Texas Estates Code. As a result, the Court ORDERS that no further notice is required to Sandra or her counsel under Texas Rule of Procedure 21 or under any provision of the Texas Estates Code.

IT IS ORDERED AND DECREED that all relief requested and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all Parties and is appealable.

This Final Judgment was judicially PRONOUNCED AND RENDERED in this Court at 100 Dolorosa, San Antonio, Bexar County, Texas on October 7, 2014, but signed on the ___5th___ day of December, 2014.


_____
JUDGE POLLY JACKSON SPENCER


539083.1                                    11

## EXHIBIT A

1.  Plaintiff shall keep all funds previously distributed to Plaintiff from the Estate, including the following:

    a.  The tax refund received in connection with the 2011 Form 1040 Sandra filed, in the amount of $631,913.00;

    b.  $1,300,000.00 received on or about March 12, 2013, as a distribution of the corpus of the Estate;

    c.  $105,215.00 received on or about November 20, 2013, as a distribution of Estate income;

    d.  $162,730.29 received on or about March 12, 2013, as a distribution of Estate income.

2.  In addition to amounts identified in No. 1, above, Plaintiff will receive a total of $5,000,000.00 from the Estate, which will be payable to Plaintiff as follows and delivered, unless otherwise provided, by bank wire as the Plaintiff directs in writing to both the Temporary Administrator (or his successor) and Jack at least 30 days before each due date:

    a.  $1,000,000.00 by 5:00 p.m. on or before the seventh (7th) day following the Effective Date to be paid as follows:

        (1)  A cashier's check payable to "Roland C. Colton Client Trust Account" in the sum of $614,810.05; and

        (2)  A cashier's check payable to "Sandra A. Ikenaga" in the sum of $385,189.95.

    b.  $2,000,000.00 by 5:00 p.m. on or before December 31, 2014; and

    c.  $2,000,000.00 paid over five (5) years and bearing 2% simple interest as follows:

| Payment Date | Payment Amount |
|---|---|
| 6/30/2015 | $200,000.00 |
| 12/31/2015 | $200,000.00 |
| 6/30/2016 | $200,000.00 |
| 12/31/2016 | $200,000.00 |
| 6/30/2017 | $200,000.00 |
| 12/31/2017 | $200,000.00 |
| 6/30/2018 | $200,000.00 |
| 12/31/2018 | $200,000.00 |

| 6/30/2019 | $200,000.00 |
| 12/31/2019 | $200,000.00 |
| 12/31/2019 | $110,000.00 (accrued interest) |

3. Plaintiff shall keep possession of or shall receive the following real estate, motor vehicles, and other personal property and accepts such in their current "As Is" condition and location:

a. 21200 Wilderness Oak, San Antonio, Texas, by Special Warranty Deed or Administrator's Deed prepared by counsel for Sandra;

b. 20851 Great Navajo, San Antonio, Texas, by Special Warranty Deed or Administrator's Deed prepared by counsel for Sandra;

c. 20935 Great Navajo, San Antonio, Texas, by Special Warranty Deed or Administrator's Deed prepared by counsel for Sandra;

d. 3654 MLK, Jr. Blvd. (and adjoining lot) Port Arthur, Texas ("the Fish Camp"), by Special Warranty Deed or Administrator's Deed prepared by counsel for Sandra;

e. 2006 Toyota Rav 4 in Plaintiff's possession;

f. 2000 Toyota Prerunner located at AHC's corporate Houston office;

g. 2000 Chevrolet Tahoe located at AHC's Georgia office;

h. Electronic golf cart;

i. Massage chair, antique table and chairs, located at AHC's Houston office;

j. Motorboat and trailer located at the AHC's Houston Office;

k. All personal property in Plaintiff's possession and subject to her control, except for any property identified on *Exhibit B* to this Final Judgment;

l. Kawasaki ATV in Plaintiff's possession;

m. Backhoe in Plaintiff's possession;

n. 1988 Ebbtide boat located at AHC's Houston Office;

o. 1997 Toyota Camry titled in Sandra's name and located in Alpharetta, Georgia

539083.1                                   13

4. Plaintiff will remain an employee of Isthmus, Inc. ("Isthmus") until and no later than October 6, 2015, as a bridge to her 65th birthday, pursuant to the following terms:

   a. Plaintiff is enjoined from interfering directly or indirectly with the operations of Isthmus. If Plaintiff must communicate regarding issues related to human resources, compensation, or health insurance coverage, Plaintiff may contact Leah Treille or her assistant directly at Isthmus, Inc.

1. Pictures from family trips to Japan;

2. Old family photo albums;

3. Framed picture of Nancy in a Kimono;

4. Nikon camera and lens;

5. The Decedent's diploma;

6. The Decedent's citizenship plaque;

7. Historical family records;

8. Chinese chess set (believe to be hand-crafted and of collector-grade value; last seen in secret storage under stairwell at 21200 Wilderness Oak, San Antonio, Texas);

9. Lord of the Rings books;

10. The following collectible-grade edition Charles Dickens books:

    a. Our Mutual Friend;
    b. Bleak House;
    c. Martin Chuzzlewit;
    d. A Tale of Two Cities;
    e. Christmas Stories;
    f. David Copperfield;
    g. Pickwick Papers;
    h. The Old Curiosity Shop.

11. The Decedent's ashes (to be delivered to Eric Goodman, or his designee, instead of the Temporary Administrator) no later than 5:00 p.m. on the seventh (7th) day following the Effective Date.

# APPENDIX B

CAUSE NO. 2011-PC-4330-A

| | | |
|---|---|---|
| IN RE ESTATE OF: | § | IN THE PROBATE COURT |
| | § | |
| JACK HIROMI IKENAGA, SR., | § | |
| | § | |
| DECEASED | § | |
| | § | NUMBER ONE |
| | § | |
| SANDRA IKENAGA | § | |
| | § | |
| VS. | § | |
| | § | |
| JACK IKENAGA, JR., *ET AL.* | § | BEXAR COUNTY, TEXAS |

## AFFIDAVIT OF JACK H. IKENAGA, JR.

| | |
|---|---|
| State of Texas | § |
| | § |
| State of Harris | § |

Before me, the undersigned authority, on this day personally appeared Jack H. Ikenaga, Jr. who upon his oath, deposed and stated as follows:

1.    My name is Jack H. Ikenaga, Jr.  I am over the age of 21 years, am competent to testify herein.

2.    I have personal knowledge of the facts stated in this affidavit and they are true and correct.

3.    I am currently President of ACCC Holding Corporation (AHC) and its wholly owned subsidiary ACCC Insurance Company (AIC).

4.    Attached hereto as *Exhibit 1* is a true and correct copy of the AHC stock certificate issued in September 2001 to me. It contains the original signature of my father, Jack Ikenaga, Sr.

5.    Attached hereto as *Exhibit 2* is a true and correct copy of the AHC stock certificate issued in September 2001 to my sister Christine Ikenaga. It contains the original signature of my father, Jack Ikenaga, Sr.

6.    Attached hereto as *Exhibit 3* is a true and correct copy of the AHC stock certificate issued in September 2001 to my sister, Nancy Ikenaga Sumners. It contains the original signature of my father, Jack Ikenaga, Sr.

7.    Attached hereto as *Exhibit 4* is a true and correct copy of the AHC stock certificate issued in September 2001 to my step brother, Eric Goodman. It contains the original signature of my father, Jack Ikenaga, Sr.

8.    Attached hereto as *Exhibit 5* is a true and correct copy of the AHC stock certificate issued in September 2001 to Linda Sue Gasiorowski, containing the signature of my father, Jack Ikenaga, Sr.to Linda Sue Gasiorowski. Linda was my sister, and she died in 2007. Since Linda's death, I have held the AHC shares transferred by my father to Linda in trust for the benefit of her only child, Patrick Gasiorowski.

9.    Attached hereto as *Exhibit 6* is a true and correct copy of the Sales Purchase Agreement for Shares of Capital Stock of ACCC Holding Corporation between my father, Jack Ikenaga, Sr. and me dated as of December 1, 2008 by which I purchased 102.46 AHC shares. I pledged those shares to my father as security for the purchase

2

money note that I signed to finance the purchase of the shares. AHC does not have possession of those shares.

10. Since Isthmus, Inc. (Isthmus) was formed in 2001, I have been one of its officers and shareholders. Attached hereto as *Exhibit 7* is a true and correct copy of the Certificate of Incorporation for Isthmus. Attached hereto as *Exhibit 8* is a true and correct copy of the shareholder record of Isthmus. As reflected in this shareholder record, AHC has never had any ownership interest in Isthmus. Isthmus provides computer software services to AIC.

11. Since IBI Group Holdings, LLC (IBI) was formed in 2008, I have been one of its managers. Attached hereto as *Exhibit 9* is a true and correct copy of the Certificate of Filing for IBI. Attached hereto as *Exhibit 10* is a true and correct copy of IBI's Operating Agreement. As reflected in this operating agreement, AHC has never had any ownership interest in IBI. IBI leases to AIC an office building IBI owns. The office building is located in Alpharetta, Georgia, a suburb of Atlanta, and houses AIC's offices in the Atlanta area.

12. I have read Sandra Ikenaga's allegations in paragraphs 45 through 47 of her Original Petition in this lawsuit with regard to a Wells Fargo Bank – Compass Bank account. AHC does not now and never has had an ownership interest in such account and no funds in such account have ever belonged to AHC.

13. "The Certificate of Incorporation for Auto Computer & Imaging, Inc." ("Auto Computer & Imaging") and the related transmittal form are attached hereto as *Exhibit 11.* I obtained these two pages from the Georgia Secretary of State, which is a

3

public office that keeps and maintains business filings for Georgia. *See Certificate of Incorporation and Transmittal Form,* attached hereto as *Exhibit 11.* These two (2) pages indicate that my father incorporated Auto Computer & Imaging in Georgia on or about February 20, 1997. I worked side by side with my father to manage Auto Computer & Imaging and, as a result, I had personal knowledge of the company's finances and business operations. Through my close affiliation with the company, I know that my father was the only shareholder at the time he formed Auto Computer & Imaging.

_____
Jack H. Ikenaga, Jr.

Signed and sworn to before me on this ___ day of August, 2014.

_____
Notary Public for the State of Texas

Caelae McAnneny
My Commission Expires
09/13/2015

2020673v.1



NUMBER 16

SHARES 48.7

Incorporated Under the Laws of
the State of Delaware

ACCC HOLDING CORPORATION

AUTHORIZED 5,000 SHARES COMMON STOCK NO PAR VALUE

This Certifies that   Jack H. Ikenaga, Jr.

Registered Holder of   forty-eight  and 7/10  (48.7) ———————— Shares of the

Capital Stock of   ACCC HOLDING CORPORATION   Fully Paid and Non-Assessable   is the

*Transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed*

this ——— 1st ——— day

of ——— September ——— A.D. 2001

_____
PRESIDENT

_____
SECRETARY/TREASURER

© 2000, Beaulieu Industries, Inc.

TCC-11

Exhibit 1



NUMBER
19

SHARES
5

Incorporated Under the Laws of
the State of Delaware

## ACCC HOLDING CORPORATION

AUTHORIZED 1,000 SHARES COMMON STOCK NO PAR VALUE

**This Certifies that**

*Registered Holder of* five (5) ———————————————— *is the*

———————————————— *Shares of the*

Capital Stock of ACCC HOLDING CORPORATION   Fully Paid and Non-Assessable

Christine Susan Ikenaga

*Transferable only on the books of the Corporation by the holder hereof in
person or by Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and its Corporate Seal to be hereunto affixed*

*this* 1st *day* *of* September A.D. 2001

PRESIDENT

SECRETARY/TREASURER

TCC-11

© 2000, Beaulieu Industries, Inc.

Exhibit 2



NUMBER 18

SHARES 5

Incorporated Under the Laws of
the State of Delaware

# ACCC HOLDING CORPORATION

AUTHORIZED 1,000 SHARES COMMON STOCK NO PAR VALUE

**This Certifies that** Nancy Ann Sumners

Registered Holder of _____ five (5) _____ is the

_____ Shares of the

Capital Stock of ACCC HOLDING CORPORATION Fully Paid and Non-Assessable

*Transferable only on the books of the Corporation by the holder hereof in
person or by Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and its Corporate Seal to be hereunto affixed*

this _____ 1st _____ day of _____ September _____ A.D. 2001

_____
PRESIDENT

_____
SECRETARY/TREASURER

Exhibit 3

TCC-11

© 2000, Beaulieu Industries, Inc.



NUMBER 20

SHARES 3

Incorporated Under the Laws of the State of Delaware

# ACCC HOLDING CORPORATION

AUTHORIZED 1,000 SHARES COMMON STOCK NO PAR VALUE

**This Certifies that** Eric J. Goodman

Registered Holder of _____ three (3) _____ is the _____ Shares of the

Capital Stock of ACCC HOLDING CORPORATION Fully Paid and Non-Assessable

*Transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed*

this _____ 1st _____ day

of _____ September _____ A.D. 2001

PRESIDENT

SECRETARY/TREASURER

© 2000, Beaulieu Industries, Inc.

Exhibit 4



NUMBER 13

SHARES 5

Incorporated Under the Laws of
the State of Delaware

**ACCC HOLDING CORPORATION**

AUTHORIZED 1,000 SHARES COMMON STOCK NO PAR VALUE

This Certifies that    Linda Sue Gasiorowski

Registered Holder of ——five (5)———————————— is the
————————————————————— Shares of the

Capital Stock of  ACCC HOLDING CORPORATION   Fully Paid and Non-Assessable

*Transferable only on the books of the Corporation by the holder hereof in
person or by Attorney upon surrender of this Certificate properly endorsed.*
*In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and its Corporate Seal to be hereunto affixed*

this ——1st—— day ——————— of —— September —— A.D. 2001

PRESIDENT

SECRETARY/TREASURER

Exhibit 5

© 2000, Beaulieu Industries, Inc.

## SALES PURCHASE AGREEMENT FOR SHARES OF CAPITAL STOCK OF ACCC HOLDING CORPORATION

This Share Purchase Agreement is made and entered into as of December 1, 2008 by and between JACK HIROMI IKENAGA (SR.) [sometimes referred to herein as "SELLER"] an individual shareholder of ACCC HOLDING CORPORATION ("COMPANY") and JACK HENRY IKENAGA (JR.), [sometimes referred to a "PURCHASER"] also an individual shareholder of COMPANY.

WHEREAS, in consideration of JACK HENRY IKENAGA's (JR.) continuing dedicated service and beneficial development of American Century Casualty Company and its affiliates, and pursuant to and as permitted by the provisions of the Shareholder Agreement regarding transfer or sale of stock of COMPANY, JACK HIROMI IKENAGA (SR.) desires to sell and transfer 102.46 of the shares of common stock of the COMPANY currently held by him to JACK HENRY IKENAGA (JR.); and

WHEREAS, JACK HENRY IKENAGA (JR.), desires to and is willing to purchase said 102.46 shares of capital stock at the price as established herein;

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## SECTION 1. SALE AND PURCHASE OF SECURITIES

1.1    Purchase and Sale of Common Stock. JACK HIROMI IKENAGA (SR.) agrees to sell, subject to the terms and conditions hereof, and JACK HENRY IKENAGA (JR.), agrees to purchase, 102.46 shares of Common Stock at a price of EIGHTY-EIGHT THOUSAND SIX HUNDRED FIFTY-EIGHT DOLLARS AND SIXTY-ONE CENTS ($88,658.61), per share (hereinafter the "Shares") for a total Common Share Purchase Price of NINE MILLION EIGHTY-THREE THOUSAND NINE HUNDRED SIXTY-ONE DOLLARS and EIGHTEEN CENTS   (S9,083,961.18)

1.2.    The Closing

(a)    The closing of the purchase and sale of the Shares by JACK HENRY IKENAGA (JR.), if not contemporaneous with the execution of this agreement, will take place on or before December 15, 2008 at a place to be designated between the parties (hereinafter the "Closing" or "Closing Date").

(b)    At the Closing (i) SELLER will produce for PURCHASER'S inspection, a certificate registered in the name of JACK HENRY IKENAGA (JR.) evidencing 102.46 Shares and, (ii) simultaneously therewith, PURCHASER will deliver to SELLER good funds and/or installment notes as agreed to by PURCHASER and SELLER in an amount equal to the Common Share Purchase Price (as set forth herein), payable to the order of JACK HIROMI IKENAGA (SR.). Pursuant to the specific terms of the promissory note and finance agreement, SELLER or SELLER'S personal representative shall retain possession of the transferred shares and hold them as collateral security until the purchase price has been paid to SELLER in full. When the purchase price has been paid in full, the certificate or certificates shall be delivered to PURCHASER.

Share Purchase Agreement
2008 – ACCC Holding Corporation

Exhibit 6

1

Confidential Subject to Protective Order

ACCC002280

(c) At closing, the parties shall both execute any documents necessary to complete and make accurate the terms of this sales transaction.

(d) Upon closing, and for so long as there is no default in the payment of the balance of the purchase price, PURCHASER shall possess all rights, title, powers, and interest in the shares, including but not limited to the right to vote the shares and to receive any and all dividends associated with the shares.

## SECTION 2. REPRESENTATIONS

2.1    SELLER hereby represents and warrants that the Company has no material debts, liabilities, obligations or commitments of any kind whatsoever, whether accrued, fixed or unfixed, liquidated or unliquidated, secured or unsecured, contingent, absolute, determined, determinable or otherwise, of which PURCHASER does not have full knowledge and information, and there is no existing condition, situation or set of circumstances which could reasonably be expected to result in such a debt, liability, obligation or commitment, contingent or otherwise, of the Company, that have not been disclosed to PURCHASER.

2.2    SELLER hereby represents and warrants that there is no action, suit, proceeding, investigation or claim pending or threatened in law, equity or otherwise before any court, administrative agency or arbitrator which either (i) questions the validity of this Agreement, or any action taken or to be taken pursuant hereto or thereto, or (ii) could reasonably be expected to adversely affect the right, title or interest of the Purchaser in the Shares or (iii) has had, or is reasonably likely to have, a material adverse effect on the value and operation of COMPANY, or any subsidiary thereof, that PURCHASER is not already aware of and fully informed thereby.

2.3    SELLER hereby represents and warrants that the COMPANY has duly and timely filed all federal, state, local and other tax returns and other required reports with governmental authorities (federal, state, local or other) required to be filed by COMPANY and it subsidiaries and each such return or report is complete and correct in all material respects, and that the COMPANY has paid or caused to be paid all taxes (including interest and penalties) that are shown on such tax returns and paid all required fees and obligations to regulating agencies through the current fiscal year and all prior fiscal years.

2.4    SELLER agrees and represents that he is transferring all right title and interest in said Shares free and clear of all interests free and clear of all liens, claims, proxies, voting trusts, adverse interests, charges, or other encumbrances except those as stated on the Share certificate indicating the existence of transfer restrictions as set forth in the Shareholder Agreement of COMPANY. PURCHASER accepts the Shares with full knowledge and understanding of the restrictions on transfer as stated in the Shareholder Agreement of COMPANY, and agrees to accept said transfer restrictions and to be bound thereby.

## SECTION 3.    INDEMNITY PROVISION REGARDING BREACH OF REPRESENTATIONS, WARRANTIES AND COVENANTS

3.1    SELLER agrees to DEFEND, INDEMNIFY AND HOLD PURCHASER, COMPANY, ACCC GENERAL AGENCY, INC., AMERICAN CENTURY CASUALTY COMPANY, its successors in interest, and any and all subsidiaries and affiliates, presently formed or formed or acquired in the future, HARMLESS from and against the full

Confidential Subject to Protective Order

ACCC002281

amount of any loss (including, without limitation, any diminution in the value of the Shares), damage, liability or expense (including amounts paid in settlement and attorneys' fees and expenses) which may arise or result either directly or indirectly from any claim, demand, cause of action or complaint which arises as a result of any failure to comply with the representations, warranties, covenants or agreements contained in this Agreement or any breach (or alleged breach) of the terms of this agreement.

## SECTION 4. MISCELLANEOUS

4.1 Agreement. This Agreement, together with all exhibits attached hereto, upon the closing hereunder, any further agreements entered into by the PURCHASER and the Company at the closing hereunder, contain the entire agreement between SELLER and PURCHASER, and supersede any prior oral or written agreements, commitments, terms or understandings, regarding the subject matter hereof.

4.2 Counterparts. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument, and all signatures need not appear on any one counterpart.

4.3 Binding Effect. Benefit and Assignment

(a) The terms of this Agreement shall be binding upon, and inure to the benefit of, the parties and their respective successors and permitted assigns whether so expressed or not.

(b) In addition to any assignment by operation of law, SELLER may assign, in whole or in part, any or all of its rights (and/or obligations) under this Agreement or under the Shares to any permitted transferee of any or all of its Shares, and (unless such assignment is expressly prohibited otherwise) any such assignment shall not diminish the rights the PURCHASER would otherwise have under this Agreement or with respect to any remaining Shares held by the Purchaser or with respect to any indemnity or reimbursement rights (or with respect to any other provisions which expressly provide that they survive any termination of this Agreement).

4.4 Severability. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereby waive any provision of law which may render any provision hereof prohibited or unenforceable in any respect.

4.5 Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas (other than any conflict of laws rule which might result in the application of the laws of any other jurisdiction).

Confidential Subject to Protective Order

ACCC002282

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed this the 1st day of December, 2008.

SELLER

_____
JACK HIROMI IKENAGA (SR.)

PURCHASER

_____
JACK HENRY IKENAGA (JR.)

ATTEST:

_____

Confidential Subject to Protective Order

ACCC002283

<u>Installment Note</u>

| | |
|---|---|
| Principal Sum: | $9,083,961.18 |
| Origination Date: | December 1, 2008 |
| Maturity Date: | December 30, 2018 |
| Interest Rate: | 5% (compounded 1x annually) |

1.1     IN CONSIDERATION OF VALUE RECEIVED, Jack Henry Ikenaga (Jr.)(or "Obligor") promises to pay to the order of Jack Hiromi Ikenaga (Sr.)(or "Obligee") at Houston, Texas or another place designated by Obligee, the principal sum of NINE MILLION EIGHTY-THREE THOUSAND NINE HUNDRED SIXTY-ONE DOLLARS and EIGHTEEN CENTS ($9,083,961.18), with interest from January 1, 2009, until maturity date of December 30, 2018 at the rate of five percent *(5%)* per annum. Interest shall compound on an annual basis and principal installments and interest are due on an annual basis, with the first annual payment commencing on December 30, 2009.

Attached hereto, and made a part hereof as if stated fully within this Note is a payment schedule. Partial payment of any scheduled annual payment due shall not constitute an event of default so long as Obligor makes minimum payment(s) within the applicable calendar year, which in total are equal to the annual interest due calculated on the remaining balance. Any interest or principal remaining unpaid after application of Obligor's payment(s) within a calendar year shall be capitalized and included as part of, and paid in addition to, the final scheduled payment. There shall be no penalty for prepayment. Any payment(s) made by Obligor prior to January 1, 2009, shall be applied to principal directly and accepted as down payment. In such event, Obligor and Obligee shall prepare an amended payment schedule to reflect the amended principal balance after down payment.

Except as otherwise set forth herein, if any installment of principal or interest hereon be not paid when due (whether by acceleration, extension or otherwise) or if Jack Henry Ikenaga (Jr.) should make, or attempt to make, any assignment for the benefit of creditors, die, be adjudged to be insolvent or unable to pay his debts as they mature or any receiver, trustee, liquidator, custodian or like officer be appointed to take custody, possession or control of any property of any party hereto or any attachment, levy, garnishment or like process become effective with respect to any collateral or security for this note, then Jack Hiromi Ikenaga (Sr.), or his heirs, assigns, or successors in interest, may declare all of the indebtedness evidenced hereby to be immediately due and payable. From and after maturity (whether by acceleration, extension or otherwise) this note shall bear interest at the rate of ten (10%) percent per annum.

Date:_____12/1/08_____

_____
Jack-Henry Ikenaga (Jr.)
Obligor/Purchaser

_____
Jack Hiromi Ikenaga
Obligee/Seller

ATTEST:

_____

Confidential Subject to Protective Order

ACCC002284

## Payment Schedule – AMENDED for Down Payment

**Origination Date:**    December 1, 2008

**Principal Sum:**    $9,083,961.18

Down Payment:    $937,743.15

Financed Balance:    $8,146,218.03

**Maturity:**    December 30, 2018

Interest Rate:    5% per annum (Compounded 1x - annually)

Annual payments due each December 30th

| Pmt | Date | Interest | Payment | Applied | Balance |
|---|---|---|---|---|---|
| | | | | | 8,146,218.03 |
| 1 | 123009 | 407,310.9 | 900,000 | 492,689.09 | 7,653,528.93 |
| 2 | 123010 | 382,676.4 | 900,000 | 517,323.55 | 7,136,205.37 |
| 3 | 123011 | 356,810.3 | 900,000 | 543,189.73 | 6,593,015.64 |
| 4 | 123012 | 329,650.8 | 1,000,000 | 670,349.21 | 5,922,666.42 |
| 5 | 123013 | 296,133.3 | 1,125,000 | 828,866.67 | 5,093,799.75 |
| 6 | 123014 | 254,690 | 1,125,000 | 870,310.01 | 4,223,489.73 |
| 7 | 123015 | 211,174.5 | 1,125,000 | 9,13,825.51 | 3,309,664.22 |
| 8 | 123016 | 165,483.2 | 1,250,000 | 1,084,516.78 | 2,225,147.43 |
| 9 | 123017 | 111,257.4 | 1,250,000 | 1,138,742.62 | 1,086,404.80 |
| 10 | 123018 | 54,320.24 | 1,140,725.05 | 1,086,404.81 | 0 |
| | Totals | 2,569,507 | 10,715,725.05 | 8,146,218.03 | |

Acknowledged:

Jack Hiromi Ikenaga

Jack Henry Ikenaga, Jr.

Confidential Subject to Protective Order

ACCC002285



# The State of Texas

## Secretary of State

CERTIFICATE OF INCORPORATION

OF

ISTHMUS, INC.
CHARTER NUMBER   01616139

THE UNDERSIGNED, AS SECRETARY OF STATE OF THE STATE OF TEXAS, HEREBY CERTIFIES THAT THE ATTACHED ARTICLES OF INCORPORATION FOR THE ABOVE NAMED CORPORATION HAVE BEEN RECEIVED IN THIS OFFICE AND ARE FOUND TO CONFORM TO LAW.

ACCORDINGLY, THE UNDERSIGNED, AS SECRETARY OF STATE, AND BY VIRTUE OF THE AUTHORITY VESTED IN THE SECRETARY BY LAW, HEREBY ISSUES THIS CERTIFICATE OF INCORPORATION.

ISSUANCE OF THIS CERTIFICATE OF INCORPORATION DOES NOT AUTHORIZE THE USE OF A CORPORATE NAME IN THIS STATE IN VIOLATION OF THE RIGHTS OF ANOTHER UNDER THE FEDERAL TRADEMARK ACT OF 1946, THE TEXAS TRADEMARK LAW, THE ASSUMED BUSINESS OR PROFESSIONAL NAME ACT OR THE COMMON LAW.

DATED FEB. 8, 2001

EFFECTIVE FEB. 8, 2001



Exhibit
7

_____
Secretary of State

Subject to Confidentiality Agreement

ISTH000729

ARTICLES OF INCORPORATION

OF

ITHMUS, INC.

FILED
In the Office of the
Secretary of State of Texas
FEB 0 8 2001
Corporations Section

## Article I.

### Name

The name of the corporation is ISTHMUS, INC.

## Article II.

### Classification

The corporation is organized pursuant to the provisions of the Texas Business Corporations Act.

## Article III.

### Duration

The period of its duration is perpetual.

## Article IV.

### Purpose

The purpose of this for-profit corporation is to engage in any lawful business activity for which a corporation may be organized under Texas law, including, but not limited to establishing, maintaining, conducting and carry on general development of computer software and imaging systems for auto insurance companies, agencies and other business use. The corporation may do all and everything necessary and proper for the accomplishment of the stated purposes herein or their attaining of any of the objectives or the furtherance of any of the purposes enumerated in these Articles of Incorporation, or any amendment thereof, necessary or incidental to the protection and benefit of the corporation, and in general, either alone or in association with other firms, individuals,

corporation, or associations, to carry on any lawful pursuit necessary or incidental to the accomplishment of the purposes or the attainment of the objectives and the furtherance of such purposes or objects of this corporation.

Article V.

## Capital Stock

The aggregate number of shares which the corporation shall have authority to issue is 1,000 shares at $0.01 par value. The shares shall be designated as Common Stock and shall have identical rights and privileges in every respect.

Article VI.

## Initial Consideration

The corporation will not commence business until it has received, for the issuance of its shares, consideration of the value of at least One Thousand Dollars ($1,000.00), consisting of money, labor done or property actually received.

Article VII.

## Registered Office

The address of the initial registered office of the corporation is 12707 I-45 North, Suite 300, Houston, Texas 77060, and the name of its initial registered agent at such address is Jack H. Ikenaga, Jr.

Article VIII.

## Initial Board of Directors

The number of directors constituting the initial board of directors is one (1), and the names and addresses of the persons to serve as directors until the first annual meeting of the shareholders, or until successors are elected and qualified are:

Page 2

Jack H. Ikenaga, Jr.
12707 I-45 North, Ste 300
Houston, Texas   77060

Article IX.

Incorporator

The name and address of the incorporator is:

Name                                                              Address

Lisa LeDoux Bruce                    13105 Northwest Freeway, Ste 730, Houston, Texas 77040

IN WITNESS WHEREOF, I have hereunto set my hand this 5th day of February, 2001.

Lisa LeDoux Bruce, Incorporator

Page 3

Subject to Confidentiality Agreement

ISTH000732

# *Transfer Ledger*
## ISTHMUS, INC.

Exhibit

8

*Liberty Legal* ®   602 State Street   South Houston, TX 77587

Subject to Confidentiality Agreement

ISTH000826

| | NAME OF CERTIFICATE HOLDER | PLACE OF RESIDENCE | TIME BECAME OWNER | CERTIFICATES ISSUED | | FROM WHOM TRANSFERRED (If Original Issue Enter as Such) | |
|---|---|---|---|---|---|---|---|
| | | | | CERTIFICATE NUMBER | NUMBER OF SHARES* | | |
| A | JACK IKENAGA | | 2/8/01 | 1 ⓒ | 1000 | ORIGINAL ISSUE | ◯ |
| | | | 2/8/01 | 7 | 140 | (ORIGINAL) RE-ISSUED | |
| | | | 2/15/007 | 8 | 50 | ERIC GOODMAN | |
| | | | 2/10/701 | 9 | 100 | PATRICK GASIORWSKI | From |
| B | JACK IKENAGA JR. | | 2/8/01 | 2 | 510 | JACK IKENAGA (SR.) | ① |
| C | PATRICK GASIORWSKI | | 2/8/01 | 3 ⓒ | 100 | JACK IKENAGA (SR.) | ① |
| D | NANCY SUMNERS | | 2/8/01 | 4 | 100 | JACK IKENAGA (SR.) | ① |
| | | | | | | | ◯ |
| E | CHRISTINA IKENAGA | | 2/8/01 | 5 | 100 | JACK IKENAGA (SR.) | ① |
| F | ERIC GOODMAN | | 2/8/01 | 6 ⓒ | 50 | JACK IKENAGA (SR.) | ① |
| G | | | | | | | ◯ |

*If the certificates are issued by a Limited Liability Company, Partnership, etc. read as Units, Membership Interests, Member Interests, etc. as the case may be.

Subject to Confidentiality Agreement

| AMOUNT PAID THEREON | DATE OF TRANSFER OF SHARES* | TO WHOM TRANSFERRED | CERTIFICATES SURRENDERED | | NUMBER OF SHARES* HELD (BALANCE) | VALUE OF TRANSFER TAX STAMP AFFIXED |
|---|---|---|---|---|---|---|
| | | | CERTIFICATE NUMBER | NUMBER OF SHARES* | | |
| | 2/8/01 | JACK JR - 510 | 1 ⓒ | 860 | 140 | |
| | | PATRICK GASIORGUSKI - 100 NANCY SUMMERS - 100 CHRISTINA IKENAGA 100 ERIC GOODMAN 50 | | | 140 | |
| | | | | | 190 | |
| | | | | | 290 | |
| | | | | | | |
| | ~~2/8/01~~ | | | | 510 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | 2/10/2011 | JACK IKENAGA SR. | | | 100 | |
| | | | | | -0- | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | 100 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | 100 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | 2/15/2007 | JACK IKENAGA (SR.) | 6 ⓒ | 50 | -0- | |

Subject to Confidentiality Agreement

ISTH000828

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Phil Wilson
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF FILING
## OF

### IBI Group Holdings, LLC
File Number: 800971228

The undersigned, as Secretary of State of Texas, hereby certifies that a Certificate of Formation for the above named Domestic Limited Liability Company (LLC) has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

The issuance of this certificate does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 04/28/2008

Effective: 04/28/2008



Phil Wilson
Secretary of State

Exhibit 9

**Subject to Confidentiality Agreement**                                                      **IBI000005**

Form 205
(Revised 01/06)

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: $300



This space reserved for office use.

in the office of the
Secretary of State of Texas

APR 2 8 2008

**Certificate of Formation**
**Limited Liability Company**

Corporations Section

---

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

IBI Group Holdings, LLC

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
### (Select and complete either A or B and complete C)

☐ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

OR

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| Jack | H | Ikenaga | Jr. |
|------|-----|-----------|--------|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| 420 Lockhaven Drive | Houston | TX | 77073 |
|---------------------|---------|------|---------|
| *Street Address* | *City* | *State* | *Zip Code* |

## Article 3—Governing Authority
### (Select and complete either A or B and provide the name and address of each governing person.)

☐ A. The limited liability company will have managers. The name and address of each initial manager are set forth below.

☑ B. The limited liability company will not have managers. The company will be governed by its members, and the name and address of each initial member are set forth below.

**NAME OF GOVERNING PERSON** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| Jack | H | Ikenaga | Sr. |
|------|-----|-----------|--------|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

OR

IF ORGANIZATION

*Organization Name*

**ADDRESS OF GOVERNING PERSON**

| 2407 Woodsboro Dr. | Spring | TX | USA | 77388 |
|--------------------|--------|------|-----|--------|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

Form 205                                              4

| NAME OF GOVERNING PERSON (Enter the name of either an individual or an organization, but not both.) | | | | | |
|---|---|---|---|---|---|
| IF INDIVIDUAL | | | | | |
| Jack | H | Ikenaga | | | Jr. |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |

OR

| IF ORGANIZATION | |
|---|---|
| | |
| *Organization Name* | |

| ADDRESS OF GOVERNING PERSON | | | | |
|---|---|---|---|---|
| 2407 Woodsboro Dr. | Spring | TX | USA | 77388 |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| NAME OF GOVERNING PERSON (Enter the name of either an individual or an organization, but not both.) | | | | | |
|---|---|---|---|---|---|
| IF INDIVIDUAL | | | | | |
| Philip | J | Bither | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |

OR

| IF ORGANIZATION | |
|---|---|
| | |
| *Organization Name* | |

| ADDRESS OF GOVERNING PERSON | | | | |
|---|---|---|---|---|
| 18422 Brackenfield | Spring | TX | USA | 77388 |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The purpose of the company is to acquire, hold and manage real property and any and all other lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

Form 205

5

Subject to Confidentiality Agreement

## Organizer

The name and address of the organizer:

Jack H. Ikenaga, Jr.
_Name_

| 2407 Woodsboro Dr. | Spring | TX | 77388 |
|---|---|---|---|
| _Street or Mailing Address_ | _City_ | _State_ | _Zip Code_ |

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: 4/25/08

_____
Signature of organizer

Form 205

6

IBI000008

OPERATING AGREEMENT
IBI GROUP HOLDINGS, LLC

This Operating Agreement *(the "Agreement")* is entered into on ___June 3, 2008___ by and between Jack Hiromi Ikenaga (Sr.), Jack Henry Ikenaga (Jr.), and Philip J. Bither *(the "Initial Members")* as follows:

WITNESSETH:

Whereas, the Initial Members desire to form and formulate a Limited Liability Company under the laws of the State of Texas;

And Whereas, the Initial Members have executed the Articles of Organization attached hereto and made a part hereof;

And Whereas said Articles of Organization have been filed with the Secretary of State of the State of Texas;

And Whereas the Initial Members desire to activate said Limited Liability Company by executing the following Operating Agreement;

Now, therefore, the following Operating Agreement shall be in full force and effect until amended according to the majority interest agreement of the Members of the Company:

### § 1.1. Name.

The name of the organization is IBI Group Holdings, LLC.

### § 1.2. Period of Duration.

The Limited Liability Company's period of duration shall be perpetual.

### § 1.3. Registered Office.

The registered office of the Limited Liability Company shall be: 420 Lockhaven Drive, Houston, TX 77073-5530.

### § 1.4. Mailing Address.

The mailing address of the Limited Liability Company shall be: 420 Lockhaven Drive, Houston, TX 77073-5530.

### § 1.5. Purpose

The purpose for which the Limited Liability Company is organized is to operate, manage, improve, repair, rent, lease, own, acquire, hold, sell, assign, mortgage, hypothecate, and otherwise deal in real property and its appurtenances and fixtures; and to deal in direct interests, Limited Liability Company interests, stockholder interests and joint venture interests which represent shares in such property; and to build or contract for the building of buildings and other structures on such property for such uses, and any other lawful business for which Limited Liability Companies may be organized under the Limited Liability Company Act of Texas.

### § 1.6. Powers

The powers, duties and obligations of the Limited Liability Company are to:

Exhibit 10

1

(A) Sue and be sued, complain and defend, and participate in administrative or other proceedings in its name;

(B) Purchase, take, receive, lease, acquire, own, hold, improve, use, and otherwise deal in and with real or personal property, or an interest in it, wherever situated;

(C) Sell, convey, assign, encumber, mortgage, pledge, lease, exchange, transfer, and otherwise dispose of all or any part of its property and assets;

(D) Lend money to and otherwise assist its Members and employees, except as otherwise provided in this Operating Agreement;

(E) Purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in, or obligations of, (i) other limited liability companies, (ii) domestic or foreign corporations, (iii) associations, (iv) general or limited partnerships, (v) individuals, or (vi) direct or indirect obligations of the United States or of any government, state, territory, governmental district, or municipality or of any instrumentality of any of them;

(F) Make contracts and guarantees, incur liabilities, borrow money at such rates of interest as the Limited Liability Company may determine, issue its notes, bonds, and other obligations, and secure any of its obligations by mortgage or pledge of all or any part of its property, franchises, and income;

(G) Lend money for its proper purposes, invest and reinvest its funds, and take and hold real and personal property for the payment of funds so loaned or invested;

To this end, the Limited Liability Company may lend money to, or guarantee any obligation of, or otherwise assist any Officer or other employee of the Limited Liability Company or of its subsidiary, including any Officer or employee who is a Manager of the Limited Liability Company or its subsidiary, whenever, in the judgment of the Managers, such loans, guaranty or assistance may reasonably be expected to benefit the Limited Liability Company. The loan, guaranty or other assistance may be with or without interest, and may be unsecured, or secured in such manner as the Managers shall approve, including, without limitation, a pledge of certificates of the Limited Liability Company;

(H) Conduct its business, carry on its operations, and have and exercise the powers herein set forth in any state, territory, district, or possession of the United States or in any foreign country;

(I) Elect Managers and appoint agents of the Limited Liability Company, define their duties and fix their compensation;

(J) Make and alter operating agreements, not inconsistent with its Articles of Organization or with the laws of this state, for the administration and regulation of the affairs of the Limited Liability Company;

(K) Indemnify a Member or Manager or former Member or Manager of the Limited Liability Company;

(L) Have and exercise all powers necessary or convenient to effect any or all of the purposes for which the Limited Liability Company is organized; and

(M) Become a Member of a general partnership, limited partnership, joint venture, or similar association, or any other limited liability company.

## § 2.1. Management by Members

The Liability Company's Management shall be vested in its Members.

## § 2.2. Apportionment

Management responsibility and/or voting power shall be apportioned among the several Members in the proportion to the percentage interest described in §3.1 of this Agreement. Members shall from time to time, designate which Member(s) shall be responsible for Financial Management and Accounting purposes.

## § 2.3 Compensation

No Member shall be entitled to receive any compensation from the Limited Liability Company, nor shall any Member receive any drawing account from the Limited Liability Company.

2

### § 2.4 Indemnification of Members/Managers

(A) The Limited Liability Company shall indemnify against liability incurred in any proceeding an individual made a party to the proceeding because the individual is or was a Member/Manager if: (i) the individual conducted himself in good faith; (ii) the individual reasonably believed: (a) in the case of conduct in his official capacity, that his conduct was in the Limited Liability Company's best interests; or (b) in all other cases, that the individual's conduct was at least not opposed to the Limited Liability Company's best interests; and (iii) in the case of any criminal proceeding, he had no reasonable cause to believe that his conduct was unlawful.

(B) The Limited Liability Company shall indemnify a Member/Manager of the Limited Liability Company who was wholly successful, on the merits or otherwise, in defense of any proceeding to which the Member/Manager was a party, against reasonable expenses incurred by the Member/Manager in connection with the proceeding.

(C) A Member/Manager who is or was a party to a proceeding may apply for indemnification to the court conducting the proceeding or to another court of competent jurisdiction.

(D) The Limited Liability Company shall pay for or reimburse the reasonable expenses incurred by a Member/Manager who is a party to a proceeding in advance of the final disposition of the proceeding if: (i) the Member/Manager furnishes the Limited Liability Company a written affirmation of his good faith belief that he has met the standard of conduct required; (ii) the Member/Manager furnishes the Limited Liability Company a written undertaking, executed personally or on his behalf, to repay the advance if it is determined that he did not meet such standard of conduct; and (iii) a determination is made that the facts then known to those making the determination would not preclude indemnification.

(E) The Limited Liability Company shall indemnify and advance expenses to an employee or agent of the Limited Liability Company who is not a Member/Manager to the same extent as if that person were a Member/Manager.

(F) Any indemnification of or advance of expenses to a Member/Manager in accordance with this section, if arising out of a proceeding by or on behalf of the Limited Liability Company, shall be reported in writing to the Members with or before the notice of the next Members' meeting.

### § 3.1. Members

(A) Members shall be admitted on such terms and conditions as the Members shall determine by unanimous vote or written agreement;
(B) Each Member shall have a voting interest which is proportional to his or her share of the profits and losses set forth in (C) below.
(C) Each Member shall have a share of the principal and income and profits and losses of the Limited Company as follows:

| | |
|---|---|
| Jack Hiromi Ikenaga (Sr.) | 60% |
| Jack Henry Ikenaga (Jr.) | 20% |
| Philip J. Bither | 20% |

3

(D) Each Member shall be provided notices at the address as follows:

> Jack Hiromi Ikenaga (Sr.)
> 2407 Woodsboro Drive
> Spring, TX 77388
>
> Jack Henry Ikenaga (Jr.)
> 2407 Woodsboro Drive
> Spring, TX 77388
>
> Philip J. Bither
> 18422 Brackenfield
> Spring, TX 77388

### § 3.2. Distributions

(A) Distributions may be declared by the Members at any regular or special meeting.

(B) Before payment of any distribution, there shall be set aside out of any funds of the Limited Liability Company available for distributions such sum or sums as the Members from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing distributions, or for repairing or maintaining any property of the Limited Liability Company, or for such other purpose as the Members shall think conducive to the interest of the Limited Liability Company; and the Members may modify or abolish any such reserve in the manner in which it was created.

(C) Distributions (to include allocation of losses) shall be made in accordance with the proportionate interest of each member as reflected in §3.1 of this Agreement.

### § 3.3. Meetings of Members

(A) Meetings of Members may be held at such place, either within or without this state, as may be stated in or fixed in accordance with the Operating Agreement. If no other place is stated or so fixed, all meetings shall be held at the registered office of the Limited Liability Company.

(B) An annual meeting of the Members shall be held at such time as may be stated or fixed in accordance with the Operating Agreement.

(C) Special meetings of the Members may be called by not less than one-third of all the Members entitled to vote or by such other persons as may be provided in the Articles of Organization or the Operating Agreement.

(D) Whenever the vote of the Members is required or permitted to be taken for or in connection with any Limited Liability Company action, by any provision of the statutes, the meeting and vote of Members may be dispensed with if all of the Members who would have been entitled to vote upon the action if such meeting were held shall consent in writing to the Limited Liability Company action taken.

### § 3.4. Notice

(A) Written notice stating the place, day, and hour of the meeting and, in case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than 10 days nor more than 30 days before the date of the meeting, either personally or by mail, by or at the direction of any Manager or person calling the meeting to each Member of record entitled to vote at such meeting.

(B) Notice to Members, if mailed, shall be deemed delivered when deposited in the United States mail, addressed to the Member, with postage prepaid; but, if three successive letters mailed to the last-known address of any Member are returned as undeliverable, no further notices to such Member shall be necessary until another address for such Member is made known to the Limited Liability Company.

(C) When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.

4

 IBI000012

At the adjourned meeting the Limited Liability Company may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, a notice of the adjourned meeting shall be given to each Member entitled to vote at the meeting.

(D) When any notice is required to be given to any Member of a Limited Liability Company under the provisions of this Agreement or under the provisions of the Articles of Organization, of the Limited Liability Company, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

(E) By attending a meeting, a Member: (i) waives objection to lack of notice or defective notice of such meeting unless the Member, at the beginning of the meeting, objects to the holding of the meeting or the transacting of business at the meeting; (ii) waives objection to consideration at such meeting of a particular matter not within the purpose or purposes described in the meeting notice unless the Member objects to considering the matter when it is presented.

## § 3.5. Voting

(A) Subject to the provisions of this Agreement which require majority or unanimous consent, vote, or agreement of the Members, the Members shall have the right to consent, vote or agree, on a per capita basis in accordance with their proportionate interest, upon any matter.

(B) Any Member may vote in person or by proxy.

(C) A majority of the Members entitled to vote shall constitute a quorum at the meeting of Members. If a quorum is present, the affirmative vote of the majority of the Members represented at the meeting and entitled to vote on the subject matter shall be the act of the Members, unless the vote of a greater proportion or number or voting by classes is required by this Agreement, or the Articles of Organization. If a quorum is not represented at any meeting of the Members, such meeting may be adjourned for a period not to exceed 60 days at any one adjournment.

## § 3.6. Action by Members Without a Meeting

(A) Unless the Articles of Organization provides otherwise, action required or permitted by this Agreement to be taken at a Members' meeting may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, and signed by each Member entitled to vote. Action taken under this subsection (A) is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date.

(B) Written consent of the Members entitled to vote has the same force and effect as a unanimous vote of such Members and may be stated as such in any document.

## § 4.1. Dissolution

(A) The Limited Liability Company shall be dissolved upon the occurrence of any of the following events: (i) when the period fixed for the duration of the Limited Liability Company expires; (ii) by the unanimous written agreement of all Members; or (iii) upon the death, retirement, resignation, expulsion, bankruptcy or dissolution of a Member, or (iv) the occurrence of any other event which terminates the membership of a Member in the Limited Liability Company. However, there shall be no dissolution if there are at least two remaining Members, and the business of the Limited Liability Company is continued by the consent of all the remaining Members of the Limited Liability Company within 90 days after the termination.

(B) As soon as possible following the occurrence of any of the events specified in this section effecting the dissolution of the Limited Liability Company, the Limited Liability Company shall execute a Statement of Intent to Dissolve in such form as shall be prescribed by the Secretary of State. The Statement of Intent to Dissolve shall be executed by any Manager of the Limited Liability Company.

## § 4.2 Death or Withdrawal

In the event of the death or withdrawal of any Member, and if such death or withdrawal is not a terminating event requiring dissolution, and the remaining Members determine to continue in

5

accordance with the consent to continue requirement contained §4.1 of the Agreement, then the continuing Members shall be entitled to purchase from the legal representative of the deceased Member, or from the withdrawing Member, that Member's proportionate interest as follows:

    (1)    In the event of the death or withdrawal of Jack Hiromi Ikenaga (Sr.), then Jack Henry Ikenaga (Jr.) shall have a right to purchase the entire proportionate interest owned by Jack Hiromi Ikenaga at book value of that proportionate interest at the time of death or withdrawal;

    (2)    In the event of the death or withdrawal of a Member other than Jack Hiromi Ikenaga, the continuing Members shall be entitled to purchase that Member's interest for book value in an amount equal to the proportionate interest then owned by each continuing Member.

Notice of intent of the continuing Members to purchase the deceased or withdrawing Member's interest shall be given to the legal representative of the deceased Member or directly to the withdrawing Member within ninety (90) days of the date of death or withdrawal. Should the sale of the deceased Member's interest not be completed, then that interest shall be transmitted to his or her heirs or legatees according to law.

### § 4.3 Non-Transferability of Interest

No Member, nor their heirs, executors, administrators, assigns or successors-in-interest shall sell, assign or otherwise transfer or encumber any interest, or portion thereof, issued or set forth herein, without the prior written consent of the other Members, unless such transfer, sale or encumbrance is in accordance with the terms of this Agreement.

### § 4.4. Amendment

This Agreement may be altered or amended by a vote of the majority (as represented by proportionate interest) of the Members, at any regular meeting of the Members or of the Managers or at any special meeting of the Members or Managers if notice of such alteration or amendment be contained in the notice of such special meeting.

### § 5.1. Execution in Counterpart

This Limited Liability Company Agreement may be executed in any number of counterparts, each of which shall be taken to be an original. Valid execution shall be deemed to have occurred when a Limited Liability Company signature page is executed by the Member in question and countersigned by a Manager.

### § 5.2. Agreement Binding

This Agreement shall be binding upon the parties hereto and upon their heirs, executors, administrators, successors or assigns; and the parties hereto agree for themselves and their heirs, executors, administrators, successors and assigns to execute any and all instruments in writing which are or may become necessary or proper to carry out the purpose and intent of this Agreement.

### § 5.3. Banking

The Limited Liability Company shall maintain a bank account or bank accounts in the Limited Liability Company's name in a national or state bank in the State of Texas. Checks and drafts shall be drawn on the Limited Liability Company's bank account for Limited Liability Company purposes only and shall be signed by a Member or an authorized and designated agent.

6

### § 5.4. Titles and Subtitles

Titles of the paragraphs and subparagraphs are placed herein for convenient reference only and shall not to any extent have the effect of modifying, amending or changing the express terms and provisions of this Limited Liability Company agreement.

### § 5.5. Rules of Construction

As used herein, unless the context clearly indicates the contrary, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

### § 5.6. Severability

In the event any parts of this Agreement are found to be void, the remaining provisions of this Agreement shall nevertheless be binding with the same effect as though the void parts were deleted.

### § 5.7. Effective Date
This Agreement shall be effective only upon execution by all of the proposed Members.

### § 5.8. Execution
This Agreement may be executed by each of the Members on a separate signature page.

### § 5.9. Waiver
No waiver of any provisions of this Agreement shall be valid unless in writing and signed by the person or party against whom charged.

### § 5.10. Applicable Law
This Agreement shall be subject to and governed by the laws of the State of Texas.

IN WITNESS WHEREOF, the parties have hereunto set their hands this the ___3RD___ day of June, 2008.


_____
Jack Hiromi Ikenaga (Sr.)


_____
Jack Henry Ikenaga (Jr.)


_____
Philip J. Bither

7

**Secretary of State ·**
**Corporations Division**
**Suite 315, West Tower**
**2 Martin Luther King Jr. Dr.**
**Atlanta, Georgia   30334-1530**

```
CONTROL NUMBER:  9709986
EFFECTIVE DATE:  02/20/1997
COUNTY        :  GWINNETT
REFERENCE     :  0152
PRINT DATE    :  03/19/1997
FORM NUMBER   :  311
```

JACK H. IKENAGA
1113 RIVER CHASE TRAIL
DULUTH GA   30136

## CERTIFICATE OF INCORPORATION

I, Lewis A. Massey, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby certify under the seal of my office that

**AUTO COMPUTER & IMAGING, INC.**
**A DOMESTIC PROFIT CORPORATION**

has been duly incorporated under the laws of the State of Georgia on the effective date stated above by the filing of articles of incorporation in the office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on the date set forth above.

*Lewis A. Massey*
LEWIS A. MASSEY
SECRETARY OF STATE

Exhibit 11



Secretary of State
State of Georgia

TRANSMITTAL INFORMATION FOR GEORGIA
PROFIT OR NONPROFIT CORPORATIONS

**DO NOT WRITE IN SHADED AREA - SOS USE ONLY**

DOCKET # _970560086_ PENDING CONTROL _2172383_ CONTROL # _9709986_

Docket Code _311_ Corporation Type _P_

Date Filed _2/20/97_ Amount Received _60_ Check/Receipt # _0135_

Jurisdiction (County) Code _091 Gwinnett 97_

Examiner _____ Date Completed _____

NOTICE TO APPLICANT: PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM.
INSTRUCTIONS ARE ON THE BACK OF THIS FORM.

1. ___970360464___
   Corporate Name Reservation Number

   Auto Computer & Imaging, Inc.
   Corporate Name (exactly as appears on name reservation)

2. ___Jack H. Ikenaga___                          770-622-9847
   Applicant/Attorney                            Telephone Number
   1113 River Chase Trail
   Address
   Duluth,                    GA.                    30136
   City                       State                  Zip Code

3. **NOTICE:** THIS FORM DOES NOT REPLACE THE ARTICLES OF INCORPORATION. MAIL OR DELIVER
   DOCUMENTS AND THE SECRETARY OF STATE FILING FEE TO THE ABOVE ADDRESS. DOCUMENTS
   SHOULD BE SUBMITTED IN THE FOLLOWING ORDER. (A COVER LETTER IS NOT REQUIRED.)

   1. FORM 227 - TRANSMITTAL FORM (ATTACH SECRETARY OF STATE FILING FEE OF $60.00 TO
      THIS FORM)

   2. ORIGINAL ARTICLES OF INCORPORATION

   3. ONE COPY OF ARTICLES OF INCORPORATION

   I understand that the information on this form will be entered in the Secretary of
   State business registration database. I certify that a Notice of Incorporation or a
   Notice of Intent to Incorporate with a publishing fee of $40.00 has been or will be
   mailed or delivered to the authorized newspaper as required by law.

   _____                          _2/18/97_
   Authorized Signature                             Date

BSR Form 227 (06-95)